The record shows that this was a caveat filed by Buchannan to prevent the plaintiff from obtaining a grant, upon a survey and entry, made under the laws of Tennessee, because, as is alleged. Buchannan has a better claim to the land, derived under a grant from the State of North Carolina, to Samuel M. Buchannan for 1800 acres, and dated in the year 1792, and surveyed in the year 1792. The caveat was filed in the County Court of Lincoln; and, by the consent of the parties, at May session, 1812, was transferred to the Circuit Court of the same county for trial at June term, 1812, *Page 279 
of the Circuit Court; the cause was continued; and at December term of the same year, the counsel of the Williamsons moved that thecaveat might be dismissed, because Buchannan claiming under a grant, could not maintain a caveat; motion was overruled. The counsel of the same party then moved, upon an affidavit, that the venue might be changed to some adjoining county. The Court overruled
the motion, stating that the matter of the affidavit was sufficient, but the application was too late. A jury was then sworn to ascertain the facts material which were not agreed on by the parties; they returned a verdict in which many facts were found; amongst the rest the following: That Robert Buchannan had a title regularly derived under the grant mentioned in the caveat; that said grant covers the land in dispute; that it lies on the first fork of Little River, which empties in on the east side, and adjoins Robert Edmondson's 1280-acre tract which lies on the same stream, beginning at the mouth thereof; that Edmondson had no other 1280-acre tract. The counsel of the plaintiff in error moved the Court to set aside the finding by the jury, and grant a new trial, which motion was overruled, and judgment rendered in favor of Buchannan. A bill of exceptions was tendered to the opinion of the Circuit Court refusing the new trial, and the cause removed into this Court; and now these points have been made by the plaintiff in error.
1st. That the Circuit Court, when applied to, ought to have dismissed the caveat.
2d. The venue ought to have been changed.
3d. A new trial ought to have been granted.
Upon the first point we have been referred to the Acts of 1807, c. 2, §§ 47, 48; and it is insisted that the legislature evidently intended that a caveat should be filed in no case where the caveator set out a complete title by grant to the land. This argument has been answered in a manner entirely satisfactory to the Court.
The words in the first of these sections are sufficiently comprehensive to include this case, and it would be unjust to exclude it on account of general words in the close of the section; because every reason which would show that a caveat ought to lie, in cases acknowledged to be within the law, apply with equal force to this case. Under the laws of North. Carolina, formerly in force in this country, a caveat is expressly authorized in such a case as this; and it is hardly probable the Assembly of Tennessee, in 1807, intended to *Page 280 
lessen the number of cases to which this remedy shall be applied.
In Virginia, a caveat is given in all cases, where it is alleged the caveator has the better right; in our statute it is given to any person who alleges he has a better claim; under their statute, it is believed caveats have been used by those who supposed they had a better right, they being grantees, as well as by those who were without grants. Why not then in Tennessee suffer those who allege they have better claims, in consequence of having grants, to use this remedy likewise? The expression in our statute is as general as that in the Virginia statute; and we ought to extend the remedy to as great a variety of cases. Surely one of the strongest reasons that can be assigned why the government should not grant land to B. is, that they have already granted the same land to A.
The second point relied upon is, that the venue ought to have been changed.
The substance of that section of the Act of 1809 upon which this question depends is, that, upon sufficient reasons being assigned, the venue may be changed if application at or before the first trial term is made. The whole question then is, When was the trial term in the Circuit Court; was it June or December? In caveat causes the defendant is not called on for a formal defence in writing; hence no issue is made up as in ordinary cases. This cause was commenced in the County Court; it was there ready for trial; by consent the parties removed it to the Circuit Court to be there tried. The first term there, after the papers were returned to the Circuit Court, may be considered the trial term. It has been urged that this case should be likened to the cases of appeals; and in these, by the express words of the statute, there must be thirty days between the county and circuit courts, otherwise the papers need not be returned until a short period before the second term succeeding the appeal. Several material distinctions exist between the cases; this is done by the consent of both parties; the other, when one is unwilling; in this, the original papers, with a transcript of the record of transfer, are delivered over to the Circuit Court; in the other, a transcript of the whole record is made out and carried up.
In case of appeal, it is made the duty of the appellant, under a severe penalty, to carry up the record; in this, it is not made the duty of either party to carry up the papers. At *Page 281 
all events, this Act of 1809 is so worded as to cause it as probable the legislature intended the construction of it should be as it has been construed by the circuit courts, as that it should be otherwise; and its opinion upon this point ought not to be disturbed. But it has been urged as this is a caveat case the trial term never arrives until the Court makes up the issue, which was not in this case till December. This construction would be attended with bad effects; and the legislature, it is believed, never intended it should be given. The first trial term is the first term at which the cause might be legally tried. In cases where an issue is made up, It is the first term after that at which the issue is so made; in caveat cases, an issue is never made until the case comes on for final hearing, which may, and frequently is, many terms after that at which the hearing might legally have taken place. This might legally have been tried at June term. The inquiry might at that term have been made by the jury, therefore that was the first trial term in the Circuit Court.
The third point has been pressed with unusual earnestness; and to form an opinion whether a new trial ought to have been granted we must of necessity look into the whole proof upon the merits of this case.
Before doing so, we ought to bring to our minds these considerations, that it is hardly possible a revising court can have as full a view of the case as the Circuit Court that superintended the trial had. We are bound down to the record; many circumstances often transpire in the course of a trial deserving much weight, which can never be spread on the record; where the judge and jury engaged in the trial coincide in opinion, we ought to hesitate on means of information as to the matter of fact, which of necessity is much more limited; and a judgment ought never to be reversed for a supposed error on this point unless in a very clear case; no reasonable ground for support ought to be left, else the opinion should never be disturbed; how then stands the merits of this question on the main fact; that is, Buchannan's grant covering this land? The grant itself calls for 1800 acres of land, on the east fork of Little River, above R. Edmondson's 1280-acre tract, beginning on a red oak and running, c. The proof is, that what may with most propriety be called the east fork, and what has been notorious as the main east fork since 1783, is ten miles from the place claimed; but it is likewise proved that the grantee in 1783 *Page 282 
called this the east fork, and at the same time Edmondson called this the first fork; but upon this point, as to whether this be the correct watercourse, there can be but little doubt; this grant is for land on the same stream with Edmondson's 1280 acres; his grant identifies the stream by description, the "first fork," and this, it is proved, is the first fork from the mouth; Edmondson has but the one tract of this size; any one looking for the land covered by Buchannan's grant, must know it was the same stream with Edmondson's; by looking at Edmondson's, he would be conducted to this stream; this calls to lie above Edmondson's. You must, then, first fix Edmondson's; this is done without difficulty, because it is to begin at the mouth of the fork, and run certain courses and distances, and its boundaries cannot be mistaken; still difficulties exist as to Buchannan's; it is to be above, but it does not say how far.
If the trees called for could be found, we would go to them and there fix the beginning; but no old mark of any description is found Well, rather than destroy the grant, we shall say it shall be adjoining or immediately above. This has been considered correct as to entries thus worded; and, with at least as much propriety, may this construction be applied to all grants, when there is nothing to counteract the presumption that the two tracts were intended to adjoin; but how are we to find the precise point of beginning? If either of the upper corners of Edmondson's called for trees of the same description that this does, and the other did not, that should be the corner upon the presumption that the trees once existed at that place, but that time or some other cause had removed them. But there is no such call in Edmondson's. Well, if the upper line of Edmondson's and the lower line of Buchannan's were to be the same length, the one ought to be the entire boundary of the other. Even this will not apply to Buchannan's case; because his lower line is shorter than that which it is to adjoin. Any shift, then, rather than let the grant be lost; it is to lie on both sides of the stream; we ought then to begin at the corner of Edmondson's, which will give the nearest the same proportion of land on each side of the stream; and by adopting this principle, and fixing the beginning according to it, although it will not include all the land claimed by Buchannan, yet it will include more of thecaveat than is now claimed, and therefore this verdict ought not to be disturbed.
In no case should a grant be void for uncertainty, if by any reasonable shift or contrivance it can be fixed to a *Page 283 
given spot, and its boundaries ascertained. Why disappoint the expectations and wishes of the grantor and grantee? Nothing but disorder, confusion, and injustice will result from such a course, not assisting those who still have warrants to satisfy to keep clear of the claims of others. If they do not, courts ought to be astute to prevent the destruction of old claims that are honest, and long since ripened into grants. In the record it is shown, that, prior to the making the entry of the caveatees, trees corresponding with those called for in Buchannan's grant were then lately marked as the beginning, and lines from those trees run and marked, and the grantees were claiming under this grant, to those boundaries thus marked. Now it is difficult to discern any fair, legal, or equitable principle upon which the State could drive the grantees from this land, if they were to attempt it, unless they could show some other place that would better correspond with the calls of the grant, which it is not pretended can be done. The grantees had paid for the land, the State had issued the grant, the place claimed corresponds with the general calls; and might it not be fairly supposed the trees called for once existed, but that time had either destroyed the trees and with them the marks, or that by some means the marks had disappeared, and that those new marks were only a renewal of the old boundary? If, then, this would be the situation of the State, the grantor, how could Williams be in a better situation? He made his entry after this new marking; we must suppose him acquainted with the land and its then situation; he would see that place corresponded with the place mentioned in the grant; might he not well suppose that those new marks were only intended to perpetuate the true boundary, as originally made? If so, why not send him somewhere else with his claim? In this case, a decision of this point is unnecessary; the point may sometime arise; let those interested look to it; it is for that purpose it is now stated. For if such a case as Buchannan's could be supported upon principle, it should never be destroyed for the want of a precedent.