Opinion of the court delivered by
Judge Whyte.
The facts of this case, as far as I consider them necessary to he stated to ground the decision on, are these. A grant issued from the state of North Carolina in the year 1794, to Norris, for 1280 acres of land, lying in the Middle District, on the north side of Elk river, beginning one quarter of a mile above the mouth of Norris’ creek, at an Ash tree on a bluff of the river, thence north 452i poles to a stake, thence west 452i poles to a stake, thence south the same, &c. In September, 1806, Norris, the grantee, took one Edmiston to an ash tree on the bluff of the river, and pointed it out as the beginning corner of his grant, and requested him to run out and mark his 1280 acre tract, the said grantee and other persons being present, and said-lines were plainly marked. Said Edmiston, early in 1807, after he had been appointed deputy surveyor, again run out and surveyed said tract as in 1806. When he first run out said lines, they were reputed and known as the lines and corners of Norris’ grant and claimed as such by said Norris. Norris settled said land in 1806, and resided on it ever since. Edmiston never measured the distance from the mouth of Norris’ creek to the ash tree, which was marked when he first saw it, but the marks were new. In 1807, he run out and surveyed oth *63 er claims calling to begin at Norris’ N. E. corner. By another witness, who settled about 80 poles irom the mouth of the creek in 1807, the land was measured from the mouth of the creek to the ash, and the distance found to be 96 poles, and no other ash tree on the bluff between where he settled and the said ash tree. It was proved that to begin at the ash tree and run north would include the land in dispute. To begin a quarter of a mile from the mouth of the creek, and run north, would not. Plaintiffs are in possession, but shewed no legal title.
This is an action of ejectment brought to recover possession of the land in dispute, claimed by the plaintiffs on the eastern boundary of the defendant’s tract of 1280 acres, between the ash tree mentioned and a point sixteen poles west of it, comprising a parallellogram whose opposite sides are sixteen poles and 4524 poles in length, and in the possession of the plaintiffs. To this piece of land the plaintiffs have shewn no legal title, and the only de-fence set up by them below to the defendant’s recovery was, that it was out of the bounds of the defendant’s claim, and so not covered by his grant. It was contended for the plaintiffs, that the defendant’s grant calling to begin one quarter of a mile above the mouth of Norris’ creek, at an ash tree, a point certain was fixed by the grant itself capable of demonstration by admeasurement; that any line deviating from this as a beginning, which was a specific, local call, was not supported by the grant, and was incapable by law of being considered as any boundary of it; that the defendant, having surveyed his tract in later times, long after the grant issued, from a point sixteen poles east of this specific local call, acquired no title to what was comprehended by this extension, and if the plaintiffs were trespassers by virtue of their possession, it was upon the possession of some other than that of the defendant.
This brings before this court a second time the doctrine laid down in the case of Williams’ heirs vs. Buchanan, 2 Tenn. Rep. 278. In that case the grant issued to Buchanan in 1792, and it appeared from the record that prior *64 to the entry of the plaintiffs in error, trees corresponding to those called for in Buchanan’s grant were then lately marked as the beginning, and lines from those trees run and marked, and the grantees claimed under this grant to those boundaries thus marked. These are-the most important facts of the case, and the reasoning of the court upon them as follows: One member says, “it is difficult to discover any fair, legal, or equitable principle upon which the state could drive the grantee from the land if it were to attempt it, unless they could shew some other place that would better correspond with the calls of the grant, which is not pretended to be done. The grantees had paid for the land, the state had issued the grant, and the place claimed corresponds with the general calls; and might it not be fairly supposed that the trees called for once existed, but that time had either destroyed the trees and with them the marks, or that' by some means the marks had disappeared and that these new marks were only a renewal of the old boundary? If, then, this would be the situation of the state, the grantor, how could Williams be in a better situation? He made his entry after the new marking; we must suppose him acquainted with the land and its then situation-” The other member says — “before the plaintiffs made their entry, new marks for a corner were shewn, by running from which the courses, of the grant, the land would be included, sufficiently notorious in point of conformity with the calls of the grant. The general description, both in the entry and in the grant, reasonably agrees with the locality of the land included by these new marks; considering the situation in which the country was placed in relation to the renewal of land marks, we are constrained, as reasonable beings and upon principles of law, to respect those boundaries, p. 284. Again he says — “it is a presumption of law, that a corner was once made, and knowing the usage and practice of the country, it is a fair presumption in favor of right, that these new marks were nothing more than a renewal of the old. At all events, between the stale and grantee, this presumption isincon- *65 trovertible, unless the state, or some other person claiming under it, can shew old corners or lines including lands which answer the description in the grant. Aside these considerations, if the surveyor failed to do his duty originally, which cannot he presumed as between the state and the grantee, the state would not be permitted to dispute boundaries marked out by the party himself agreeing with the calls in the grant, unless it could shew a survey originally made.” I have cited these parts of the several opinions at length, as the court by that case have laid down the law that new marking shall be evidence of the old marking of the original survey, in certain cases, under certain circumstances. I feel no disposition, for my part, to overturn it. I believe it just, and that in its operation on the claims of individuals it will have the beneficial effect of promoting the more deserving. Coinciding, therefore, and having made the above large extracts from the case, which constitute a lucid application of the grounds and reasons of the decission, further observations of mine in concurrence therewith are rendered superfluous.
But it is said in the argument, that the present case differs in two particulars from the case of Williams’heirs vs. Buchanan; first, that in the present there is the finding of the jury, that there was no original survey on which the grant to Norris issued, and, therefore, one cannot be presumed against such finding: and secondly, that here the calls of the grant were not pursued by a certain variation therefrom of 16 poles.
As to the first, I could observe, that the acts of Assembly directing the mode of appropriating land, and prescribing the requisites to pass the title from the State to an individual, require a survey to be made specially designating the land to be comprehended in the grant. Hence, it follows, that in all cases the law presumes an actual survey where a grant issues, and on trials in ejectment, the grant is conclusive evidence Of it. It cannot, therefore, be averred in such case that there has been no actual survey. This I take to be a well established principle in *66 making out our land titles, recognized bj many decisions in this court and not now to be controverted. The rea-soiling of the judges on this point may be found at length in Haywood’s Reports and Tennessee Reports, passim, and, in short, amounts to this, that the law gives evidence to the acts of public officers done in the due course of the execution of their duty, and the discharge of the trust reposed in them; that the emanation of a grant, which is the completion of title is the highest evidence of the regular execution of all the prerequisites to its own execution — evidence in its nature incontrovertible as being a public record, importing in itself absolute verity, sanctioned by the great seal of the state, and admitting no averment, plea or proof to the contrary. Co. Lit. 260. These principles are applicable in all trials in ejectment, and in all cases where the grant comes in collaterally to be used as evidence. They extend not, however, to the case of a direct judicial proceeding. The finding, therefore, by the jury in the case of actual survey of the land by the surveyor, previous to the issuing of the grant, is what cannot be noticed by the law.
As by presumption of law an actual survey has been made, the next question is, whether the actual survey, in contemplation oí law, will not be considered as covered by the grant, though purporting to be not so by its calls. If the affirmative of this proposition should be found to be the law by the course of decision, then the case will stand thus. — As the grant evidences an original survey, which is not to be controverted, and by the course of decision this survey is covered by it; and as the case of Williams’ heirs vs. Buchanan makes the late survey evidence of the original survey, and its substitute in certain cases; — it follows, that if the grant in contemplation of law, would have covered the survey of 1806 or 1807 as an original survey, it will cover it now as its substitute by that case, if it comes within the scope oí it..
Will the grant cover an original survey, though not conformable to its calls? This is, of course, to be understood as against the state and subsequent claimants to the sur *67 vey. This point has been settled long ago by the case oí ■r. , , . , . Parsons vs. Rountree, which is considered a leading case. 1 Hay. 378. “Rountree entered a tract of land lying on Shoco creek, running south, then east, then north to the creek, then up the creek to the beginning. In the grant the courses were reversed, beginning on the creek at a tree, and running north, then east, &c. placing the land on the opposite side of the creek from that on which it was really surveyed, so that the grant did not cover any of the land surveyed. Rountree settled on the land, which was afterwards entered by Parsons, who got a grant and brought an ejectment.” The case was several times argued, and at last determined by the unanimous opinion of the court, that the mistake of the surveyor or secretary who filled up the grant, should not prejudice the defendant, but that he was well entitled to the land intended tobe granted, and which had been surveyed.
This case of Parsons vs. Rountree, shews that the survey is evidence of the land granted,, notwithstanding the calls of the grant may not cover a single foot of it. Still in contemplation of law it shall cover it and protect the land surveyed to the party. That case is much stronger than the present, for the present is only a small deviation from one of the calls of the grant. The application of Parsons and Rountree to the present case is apparent. If the survey of 1806 or 1807 had been an original survey on which the grant to Norris issued, by the case of Pax--sons and Rountree, the grant would have covered the land, and defended it against all claims originating subsequent to the survey. So by the case of Williams’ heirs vs. Buchanan, the survey subsequent to the grant and prior to the inception of any conflicting claim shall be presumed to be a retracing of the lines, and the marking of such late survey be a re-marking of the original survey. This presumption, raised by the case of Williams vs. Buchanan, that the late survey shall be evidence of the original survey, seems to require two conditions as necessary to its existence, viz: that this late survey should have a reasonable conformity to the calls of the grant, and that no *68 original survey be proved to exist elsewhere. The'law of that case has been opposed in argument by impeach-jng the reason and soundness of the former of these, and it is said, that a reasonable conformity with the calls of the grant being required, is a principle too vague for application to legal rights, and for judging the acts and conduct of the party and surveyor. I cannot see any thing objectionable in it. On the contrary, 1 think it is founded in right reason, recognized by the analogies of law in many cases, and certainly agreeable to good morals. It is not reasonable to expect the most scrupulous exactness in every punctilio of the routine of duty, and such a discharge of duty as shews good faith, must, in the course of human action, be deemed sufficient, for perfection is not the attribute of our nature; and the law so considers the discharge of the duty generally, whether such duty is of a public or private nature. Thus, in conducting a suit, reasonable diligence is required of the party; in a bailment, reasonable care, &c. and upon the very case we are now speaking of, the law has passed by the act of 1807-, considering the surveyor’s duty well executed, if the deviation or error does not exceed one tenth of what was prescribed. As applicable to surveys be- ■ tween the state and a party, the maxim de minimis non curat lex may be noted.
As, on the one hand, minute exactness would be unreasonable, so on the other hand would too much laxness, for then the consequences predicted by the argument might take place, and from interested motives the locus might be entirely changed. This would be ill faith, contrary to good morals, and the adoption of a principle to be studiously guarded against. The qualification that the late survey should reasonably conform to the calls of the grant seems a proper rule, and while it will cover small mistakes, it will exclude fraud, give fixedness and permanence to possessions legally and fairly obtained, discountenance strife and law suits and result in the quiet and repose of neighborhoods.
It seems to me, a re-marking that is notorious, in all *69 eases ought to he permitted, as against a subsequent claimant, to be evidence of the original survey, provided, there be no evidence of an existing original survey, no fraud, no suc.h gross mistake or deviation as m law would constitute a fraud. This latter case is declared by the act of 1807 to be one fourth part.
I am therefore of opinion that there is no error in this record, in the refusal of a new trial, for it appears, upon the whole evidence, that the defendant in error is entitled to the verdict and judgment he has obtained, and therefore the judgment of the circuit court ought to be affirmed.
Judgment accordingly affirmed.