18 U.S. 165 (____)
5 Wheat. 165
BLAKE et al.
v.
DOHERTY et al.
Supreme Court of United States.

THIS cause was argued by Swann and Jones, for the plaintiffs in error, and by the Attorney-General and Kelly, for the defendants in error.
March 13th. MARSHALL, Ch. J., delivered the opinion of the court. 
This was an ejectment, brought in the circuit court of the United States for the district of West Tennessee. The plaintiff made title, under a grant *166 from the state of Tennessee, dated in 1808, which comprehended the land in controversy. The defendants claimed under a patent from the state of North Carolina, dated in 1794, containing the following description of the land granted, &c.: "A tract of land, containing 5000 acres, lying and being in our middle district, on the west fork of Cane creek, the waters of Elk river, beginning at a hickory, running north 1000 poles, to a white oak, then east, 800 poles, to a stake, then south, 1000 poles, to a stake, thence west, 800 poles, to the beginning, as per plat hereunto annexed doth appear."
For the purpose of designating the land described in this grant, the defendants then gave in evidence the plat and certificate of survey annexed *361] thereto, a certified copy of the entry on which the grant was *issued, and the general plan or plat filed in the cause. They also proved, that this plan or plat was a correct representation of Cane creek, of the west fork thereof, and of the land claimed by them. They also proved, that in 1806, prior to the entry on which the plaintiff's grant was issued, a survey had been made, and a corner hickory and white oak, and lines around the said tract (as the defendants then claimed) were marked; and prior to the plaintiffs' entry, were esteemed by the people in the neighborhood to have been marked as the defendants' land. The land in dispute lay within the territory ceded to the United States, by the Indians, in 1806, and no actual survey thereof had been made, previous to the emanation of the grant.
Upon this evidence, the counsel for the plaintiff requested the court to inform the jury, that the said demarcation was not sufficient in law to locate the grant to the spot included in the said lines; and that the locality of the said lines could not legally be ascertained, either by the plat annexed to the grant, or by the entry or general plan; but the court instructed the jury, that the said demarcation, entry and general plan, might be used by them for that purpose. The counsel for the plaintiffs excepted to this direction of the court; and a verdict and judgment having been given for the defendants, the cause is brought by writ of error before this court.
As the first patentee was a fair purchaser of the quantity of land specified in his grant, and has placed his warrant, which was the evidence of that *362] purchase, *in the hands of the surveyor, a public officer designated by the state to survey the land intended to be granted; and as the land claimed under this grant, was actually surveyed and marked out, before the plaintiff made his entry, so as to give him full knowledge of the title of the defendants, whatever that title might be; the plaintiff can put himself only on the strict law of his case. But to that strict law he is entitled.
It is contended, that the circuit court erred, 1st. Because the grant, under which the defendants claim, is absolutely void for uncertainty; and, consequently, no testimony whatsoever ought to have been admitted to give it locality. That disposition, which all courts ought to feel, to support a grant fairly made for a valuable consideration, receives additional force from the situation in which the titles to land in Tennessee are placed; and the courts of that state have invariably carried construction as far as could be justified, to effect this purpose. It is, undoubtedly, essential to the validity of a grant, that there should be a thing granted, which must be so described as to be capable of being distinguished from other things of the same kind. But it is not necessary, that the grant itself should contain such *167 a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed. Almost all grants of land call for natural objects, which must be proved by testimony consistent with the grant, but not found in it. Cane creek, and its west fork, are to be proved by witnesses. So, *the [*363 hickory which is to constitute the beginning of a survey of a tract of land to lie on the west fork of Cane creek. If, in the nature of things, it be impossible to find this hickory, all will admit the grant must be void. But if it is not impossible, if we can imagine testimony which will show any particular hickory to be that which is called for in the grant, then it is not absolutely void for uncertainty, whatever difficulty may attend the location of it.
Now, suppose this grant to have been founded on actual survey; suppose, the surveyor and chain-carriers to go to the hickory claimed by the defendants as their beginning, to show it marked as a beginning, to trace a line of marked trees from this beginning around the land, and to prove that this is the very land which was surveyed for the person in whose favor the grant issued. In such a case, the right of the defendants to hold the land would scarcely be questioned. Yet, if the patent was void upon its face, these circumstances could not make it good. The grant purports to have been made on an actual survey; and the non-existence of that survey, though it may increase the difficulty of ascertaining the land granted, does not change the face of the instrument.
It has been said, that this patent does not call for a marked hickory, and therefore, no means exist of distinguishing it from any other hickory. But it may have been marked by the surveyor, as corner-trees are generally marked, without noticing the fact in the grant; and it is identity, not notoriety, which is the subject of inquiry. *Could it ever have been [*364 known by the patentee, or by those who might purchase from him, that the land had not been surveyed, yet a beginning corner might have been marked, and if the beginning be established, the whole tract is easily found. We think, then, that testimony might exist to give locality to this grant, and therefore, that it is not void on its face for uncertainty.
2d. We are next to inquire, whether improper testimony was admitted; and whether the court misdirected the jury. It has been determined in this court, that the plat and certificate of survey annexed to the patent, may be given in evidence; and it has been determined in the courts of Tennessee, that a copy of the entry on which the survey was made, is also admissible. In admitting these papers, then, there was no error.
But the court also admitted, what is called a general plan, and a survey made prior to the plaintiff's entry of the land, as claimed by the defendants. The bill of exceptions does not so describe this general plan, as to enable the court to say, with certainty, what it is. If it is a plan, made by authority, in conformity with any act of the legislature, it may be submitted, with other evidence, to the consideration of a jury, to avail, as much as it may, in ascertaining boundary.
But the court has also permitted, what is denominated a demarcation, which we understood to be a private survey, made by direction of a party interested under the grant, and assented to by the defendants, to be given in evidence. *This private survey might have been made on any other [*365 part of the west fork of Cane creek, with as much propriety as on *168 that where it has been made. It would have been equally admissible, if placed anywhere else on that stream. To allow it any weight, would be to allow the grantee to appropriate, by force of a grant, lands not originally appropriated by that grant. This would subvert all those principles relative to conveyances of land which we have been accustomed to consider as constituting immutable rules of property.
The legislature of Tennessee has certainly not supposed, that any individual possessed this power of fixing vagrant grants. In the act of 1807, ch. 2, they have enacted, that any person claiming under a grant from the state of North Carolina, issued "on a good and valid warrant, the locality of which said grant cannot be ascertained, on account of the vagueness of the calls by the surveyor, or from the calls and corners of the said survey becoming lost or destroyed, or on account of the surveyor and chain-carriers being deceased, so that the marks and corners cannot be established, shall be entitled to obtain a grant for the same quantity of land called for in said grant." This liberal provision would have been totally unnecessary, if the grantee might have remedied every uncertainty in his patent, by his own act. If, under his patent, he might survey any vacant land he chose, the privilege *366] of obtaining a new patent would be a useless one. *It is obvious, that the legislature did not suspect the existence of this power to make new boundaries, where none before had been made, or where none could be found.
Neither, as we understand the cases, has this principle been established by the courts of Tennessee. The case relied on for this purpose, is the heirs and devisees of Williamson v. Buchanan (2 Overt. 278). In this case, Judge WHITE was of opinion, that the land was ascertained by the calls of the patent, without resorting to the survey and marks made subsequent to its emanation. Both his argument, and his language, in coming to this conclusion, indicate the opinion, that Buchanan's claim to the land in controversy depended on it. After having come to this conclusion, however, he throws out some hints calculated to suggest the idea, that these modern marks might possibly have been considered, had the case required it, as the renewal of ancient ones which had been destroyed. But these hints seem rather to have been intended to alarm those who were taking up land held by others under ancient grants, whose boundaries were not accurately defined, except by those modern marks, than to give any positive opinion on the point. At any rate, these suggestions were made in a case where the patent, as construed by the judge, called to adjoin the upper line of another tract, and its general position was, consequently, ascertained. In such a case, where the body of the land was placed, its particular boundaries might be ascertained *367] by testimony which would not be deemed *sufficient, where the patent contained no description which would fix its general position. Judge OVERTON, who also sat in this cause, gave more importance to the marks newly made; yet, his opinion, too, seems to be founded on the fact, that the body of the land was fixed by the description contained in the patent. "Before the plaintiffs made their entry," he said, "new marks for a corner were shown, running from which the courses of the grant, land would be included, sufficiently notorious, in point of conformity with the calls of the grant. The general description, both of the entry and the grant, reasonably agrees with the locality of the land, by these new marks." He then *169 argues, that these new marks may be considered as replacing others which had been originally made. The case, however, did not depend on this point, and it was not decided. Had it ever been decided, this court would have felt much difficulty in considering a decision, admitting marks as auxiliary evidence to prove precise boundary, in a case where the patent was admitted to contain a description sufficiently certain to place the body of the land, as authority for the admission of marks made by the party himself, in a case where the patent only places the land on a stream, with the length of which we are unacquainted.
We think, then, that the circuit court erred, in instructing this jury, that they might use this demarcation, for the purpose of ascertaining the land contained in the grant under which the defendants claimed, and for this error the judgment must be reversed.
*JOHNSON, Justice. (Dissenting.) [*368
The principal difficulties in this case arise from the equivocal nature of the language in which the bill of exceptions is expressed. In that part of it which details the evidence offered, the words are, "that in 1806, or early in 1807, a corner hickory, and a white oak, and lines around said tract, as now claimed and represented in said plat, were marked." The word marked, may be taken either as an adjective, or a participle, and in the former sense, it would mean, it was then a marked line. If this be its proper sense, it is impossible to doubt, that the evidence was altogether unexceptionable. In this sense, I am inclined to think, the word ought to be taken, from reference to the context. For, one general object was, to prove notoriety, or notice to the plaintiff, in order to affect him with the charge of obstinacy or folly, in running a line which had already been surveyed. And the same inference results from its being stated a few lines after, "that no proof was given of any lines or corners having been marked, before 1806:" A passage which would have been nugatory, if the word marked had been used as a participle of the verb to mark; for, the affirmance of the action at a specified time, would have implied a negation as to any other time.
But taking this word, with its grammatical effect, as a participle, then an ambiguity arises on a comparison of the charge prayed and the charge given, as expressed in the subsequent part of the bill of exceptions. For the prayer is, "that the judge instruct the jury, that said demarcation was not in law *sufficient to locate said grant to the spot included in said lines; and [*369 also, that the locality of said lands could not legally be ascertained, either wholly or in part, by the plat annexed to the grant, or by said entry, a copy whereof is annexed as aforesaid, or by said general plan; but the said judge instructed the jury, that the said demarcation might be used for that purpose, by the jury, and also, that the plat aforesaid might be used by them, and the said entry also, and the said general plan, for the same purpose."
If the instruction prayed was, that the demarcation, as it is called, considering it as the act of an indifferent person, had not the effect of an original survey, in defining, or laying off to the defendant, the land which it embraced, there cannot be a doubt, that he was entitled to that charge, and it was error in the court not to have given it. But I am of opinion, that it cannot be so understood; for there is no refusal to give the instruction prayed, and a different *170 instruction given; but the words of the instruction are calculated to express a direct negation of the proposition maintained by the plaintiff. It is obvious, from the language of the charge, that the court considers the instruction prayed, as in the same degree applicable to every item of the evidence tendered; and I am, therefore, sanctioned, in assuming, that the charge did not go to the legal effect of the demarcation, but asserted, that evidence of its having been made, and where it was made, with reference to the conflicting lines of the parties, was proper to go to the jury. Under *370] this view of the subject, I *cannot see how it was possible, unless the grant was void, to withhold it from the jury, when pursuing the inquiry into which they were called to enter. The grant conveys a specified quantity of land, and the locus in quo is the only question to be decided. A reference is made by the grant, to a plat annexed, and the defendant must prove, that the land he holds conforms in description to the original plat. He must, of course, show what land he does hold, and this can only be done by reference to his marked line. The conformity of the demarcation to the original plat, is a subsequent and subordinate question, and one which the jury must decide on, according to the evidence which shall be adduced to that point. But how to introduce it, without referring to the defendant's line, I cannot perceive.
I cannot subscribe to the opinion, that the idea is for a moment to be tolerated, that there is anything fictitious or unreal in the plat attached to the solemn grant of the state. It bears upon its face the only evidence which ought to be required, and evidence, in my opinion, which ought not to be contradicted, that a survey actually was made. Nor are marked trees or boundaries indispensable to such a survey; though the lines had been traced out on the soil, or stepped off to the grantee, the grant would attach to the designed spot, with all the force that would have been given to it, by a fence or a wall. Identity is the only question to be decided by a jury, and if they can be satisfied, that the land held by the defendant, is the same land which was granted to him, it is all that should be required. At least, *371] early *grants should have the benefit of these principles, as against those who interfere with existing lines. And this I understand to be the received doctrine of the courts of Tennessee. (Smith v. Buchanan, 2 Overt. 308.)
It will be perceived, that the sufficiency of the evidence in this case to establish the locus in quo, is not the question. If the verdict was founded on evidence which could not support it, that might have been considered below, on a motion for a new trial. But the single question which the case presents is, whether the evidence here tendered was proper circumstantial evidence to go to the jury, in order to establish the locus in quo. The answer of the court is, that it may be used for that purpose. And in my opinion, unless it ought to have been rejected altogether, on the ground of invalidity of the grant, it was all properly admitted for that purpose; not on the idea, that the demarcation operated at all in conveying the estate, but as a necessary preliminary to the whole evidence. Respecting the entry, there can be no doubt; and all the rest was calculated to prove that these lines were marked at an early day, and engrafted upon a general survey of the county, made under an act of the legislature, for the purpose of exhibiting *171 the relative position of estates claimed in the county. This showed the early and continued claim of the defendant; and whether his possession was of the same land which had been granted to him by the state, remained for the jury to decide, upon such evidence as the nature of the case required. Facts may have existed, in their own knowledge of the *country, or [*372 been brought to their notice from the testimony of others, or may even have been gathered from the face of the plat, and reference to natural objects.
We know the manner in which this country has been sold and settled, and the necessity of yielding a liberal acquiescence to the claims of early grants. So strongly am I impressed with this opinion, that I see no reason why a grant may not have the effect of a standing warrant of survey, so long as the land purporting to have been surveyed, shall remain unoccupied. It is doing no injury to the individual right; and the state having received a compensation, and pledged itself for the conveyance of a certain quantity of land, sustains no injury, where the survey is reasonable, and bearing a subsequent conformity to the grant and survey under which the claim is asserted.
In the case before us, it is obvious, that the survey offered in evidence was made with reference to the creek, as traced upon the original plat. It does not, it is true, conform to the entry, in commencing at the mouth of the west fork, which is obviously the true construction of the entry, but it embraces the mouth of the west fork, and conforms to natural objects. And this appears to be sufficient, under the decisions of this court, and the liberal principles admitted in Tennessee in surveying upon entries. (McIvers' Lessee v. Walker and others, 9 Cranch 173, and 2 Overt. 66, passim.) At least, I presume the evidence in this case was all properly used toward establishing the right to that part of *the defendant's land which lay above [*373 the mouth of the west branch of Cane creek, with reference to which part, the survey might well be supported by his entry; and if it was legally admitted as to any part, the instruction of the judge ought to be sustained.
It has been urged, that this idea precludes the necessity of those statutory provisions of Tennessee, which permit the holders of grants on which the lands cannot be located to lay their warrants upon other land. I confess, I cannot see the force of this argument; for it is not contended, that an individual survey will give any strength to a title otherwise defective, or cure any inherent vice in the original survey. If the plat attached to the grant has reference to nothing from which its locality can be determined, it is not pretended, that an individual, or private survey, will make it better. On the contrary, the defence is founded upon the supposition, that the cases provided for by those laws, is not this case; that the land admits of being identified, and is that which the defendant has marked off. It would be curious, if other courts should decide that the defendant's case was not provided for, because it had locality, while we are deciding, that it is provided for, because it has no locality. He would then have no consolation for the necessity of abandoning his "dulcia arva," and becoming the "novus hospes" of some other resting place.
Judgment reversed.
*172 *374 *JUDGMENT.  This cause came on to be heard, on the transcript of the record of the circuit court for the district of West Tennessee, and was argued by counsel: On consideration whereof, this court is of opinion, that the circuit court for the district of West Tennessee erred, in instructing the jury, that they might use the demarcation, in the bill of exceptions and opinion of the court mentioned, for the purpose of ascertaining the land contained in the grant under which the defendant claimed: It is, therefore, adjudged and ordered, that the judgment of the said circuit court in this case be, and the same is, hereby reversed and annulled. It is further ordered that the said cause be remanded to the said circuit court, with directions to issue a venire facias de novo.