## JUNE TERM, 1842.    129

Doe ex dem. Brown and Wife v. Hunt & Clements.

## DOE ex dem. BROWN and WIFE v. HUNT & CLEMENTS.

1. The act of Congress of 1820, in respect to the division of fractional sections, is not to be construed as imperative in requiring those that contain more than one hundred and sixty acres, to be so divided in all cases as to make half quarter sections, though its length and breadth admits of the formation of several.

2. Where a patent described the land conveyed by it thus, " the south-west quarter of section twenty-two, &c. containing ninety-two acres and sixty-seven hundredths of an acre, according to the official plot of the survey of the said lands returned to the General Land Office, by the Surveyor General:" *Held*—that ninety-two 67-100 acres, as indicated by the subdivision marked on the " official plot," was all that could be claimed under the patent.

THIS was an action of ejectment, brought by the plaintiffs in error, in the Circuit Court of Mobile for the recovery of "the east half of the south-west quarter of fractional section number four, south of range number one, west, in the district of land subject to sale at St. Stephens, Alabama, containing eighty acres." The defendants, under the consent rule, confessed lease, entry and ouster, and the cause was tried on the plea of *not guilty.* On the trial a bill of exceptions was sealed at the instance of the plaintiff, from which it appears that James Etheridge, by notice addressed to the Register and Receiver of the Land Office at St. Stephens, on the 28th January, 1831, claimed the right of pre-emption under the act of Congress of the 29th May, 1830, to the south-west quarter of section twenty-two, township four, and range one, west. Afterwards, on the 30th May, 1833, a patent in due form was issued to Etheridge "for the south-west quarter of section twenty-two, in township four, south of range one, west, in the district of land subject to sale at St. Stephens, Alabama, containing ninety-two acres and sixty-seven hundredths of an acre, according to the official plot of the survey of the said lands, returned to the General Land Office, by the Surveyor General."

On the part of the defendants it was' shewn, that Wm. D. Stone, on the 25th March, 1831, by a notice addressed to the Register and Receiver of the Land Office at St. Stephens, claimed the right of pre-emption, under the act of the 29th May,

17

1830, to the fraction situated in the west part of the south-east quarter of section twenty-two, in township four, range one west of thirteen. Afterwards, on the 17th day of December, 1832, a patent was issued in favor of Stone, "for the south-east subdivision of fractional section twenty-two, in township four, south of range one, west, in the district of lands subject to sale at St. Stephens, Alabama, containing one hundred and ten acres and fifty hundredths of an acre.

It was admitted that the plaintiffs have the entire interest which by the patent was conveyed to Etheridge, and the defendants were entitled to the land of which Stone was the patentee. It was proved that the fractional section might be so subdivided as to survey an entire south-west quarter, without interference with any private land claim, leaving a residuum in the section, both on the north and on the east; and that the contents of the section were two hundred and ten acres, although the government survey indicated but two hundred and three 17-100 acres.

The following diagram demonstates the form of the fractional section, with its subdivisions, as it is shown by the books of the Surveyor General.

The plaintiffs proved that the subdivision marked on the diagram had never been made by the Surveyor by running and marking the line on the ground, but posts were found on the west and south lines, each a half a mile from the southwest corner, which appeared to have been placed there by the United States Surveyor.

The Court instructed the jury that if they believed the evidence they must find for the defendant. *And further*, that if

said fractional section twenty-two was capable of being subdivided into an entire south-west quarter section, or two half quarter sections, leaving a residuum still, the Surveyor General was not required under the acts of Congress providing for the subdivision of the public lands, and the instructions of the Secretary of the Treasury, made under the act of 24th April, 1820, entitled "an act making further provision for the sale of the public lands," to make in his subdivision of the same, either such quarter section or half quarter sections; but might lawfully subdivide the same into two lots, as indicated by the diagram, and that under such a subdivision Ethridge's patent did not entitle him to a quarter section, but only to the eastern lot marked A. while the western lot, B., vested in Stone, in virtue of his patent. The plaintiffs objected to a part of the evidence offered by the defendants, but no exception was taken to the decision of the Court overruling the objection. The jury returned a verdict for the defendants, and judgment being thereon rendered, the plaintiffs prosecuted an appeal to this Court.

SHERMAN, with whom was CHAMBERS, for the plaintiffs, insisted that the laws regulating the survey of the public lands requires that fractional sections containing one hundred and sixty acres or more, must, if practicable, be so subdivided as to make one or more quarter sections. That the subdivision which appears on the books of the Surveyor General's Office was unauthorized, as the fractional section of which the land in question is a part, might have been so divided as to make a south-west quarter, leaving a fraction on the east and north. Although the patent to Etheridge states the number of acres to be ninety-two 67-100, yet the description of the tract as a quarter section, is equivalent to a designation of length and breadth, and will control what is said as to quantity. They cited and commented upon the acts of Congress of 1796, 1800, 1804, 1805, 1820, 1824, 1830, 1832, in relation to the survey and disposal of the public lands, pre-emption rights, &c. Also the second part of the work upon Public Lands, edition of 1838, containing instructions of the Secretary of the Treasury and Commissioner of the Land Office, and opinions of the Attorney General, see pages 1035, 180–1–2–3–7, 921, 820, 826–7, 819, 854, 933–4, 136, 555, 363–8, 372.

The plaintiffs also relied on 6 Cow. Rep. 607: 6 Cranch's Rep. 237; 5 Mason's Rep. 410; 1 Paine's Rep. 496; 6 Cranch Rep. 165; 4 Stew. and P. Rep. 396; 2 Por. Rep. 40–3; 7 ib. 432; Wheeler's Com. L. Cases Tit. Boundary, 488–9–90; 1 and 2 Ohio Rep. 144; 3 Stew. Rep. 76; 1 Ohio, 170; 1 Peters' Rep. 665; 5 Porter's Rep. 327; 3 Stew. and P. Rep. 105; 4 Stew. and P. Rep. 32; 5 Porter's Rep. 245; 1 Pet. Rep. 13; 6 ib. 345; 3 Louisiana Rep. 59; Peters' C. C. Rep. 496; 13 Pet. Rep. 498; 5 Wheat. Rep. 293; 7 ib. 212; 11 ib. 380; 10 ib. 662.

CAMPBELL, for the defendants. The opinion of the Attorney General of the United States upon the present case, when it was under the examination of the Secretary of the Treasury, if it is to be regarded as authority, explicitly states that the fractional section was subdivided according to law. [2d part of the work on Public Lands, 136.] The opinion of the Attorney General is sustained by the instructions of the Secretary of the Treasury, under the act of the 24th April, 1820, [ib. 820,] and these instructions have been followed in the survey of the public lands, [881, 854, 922.]

But the opinion of the Attorney General is correct, independent of the exposition of the act of 1820, which had been previously made by the Secretary of the Treasury.

Again—the defendants claim under the oldest patent, which appropriates the land in the eastern subdivision, but if the survey is to be changed Stone's patent must cover a quarter section, instead of Etheridge's.

Lastly—the patents call for the map made of the fractional section, and it is not permissible to claim under a survey never made as indicated by the map itself. [4 Peters' Rep. 332.]

COLLIER, C. J.—The first charge of the Court, conceding the truth of all the evidence, affirms that the plaintiffs have not made out a case which entitles them to recover. The second declares, that although the fractional section twenty-two was susceptible of division, so as to make an entire quarter section and leave a residuum, yet neither the acts of Congress providing for the subdivision of fractional sections, or the in-

structions of the Secretary of the Treasury under the act of the 24th April, 1820, made such a division indispensable; but it was entirely regular to divide the fraction into two tracts by a north and south line.

It is needless to notice all the acts of Congress in relation to the survey of the public lands, which have been cited by the plaintiff's counsel; the act of 1820 is the only one that is pertinent to the present inquiry. The first section of that enactment, after directing that the government lands shall be offered at public sale in tracts of half quarter sections and providing for the subdivision of sections upon the principles of the second section of the act of February, 1805, proceeds, "and fractional sections containing one hundred and sixty acres and upwards, shall in like manner, as nearly as practicable, be subdivided into half quarter sections, under such rules and regulations as may be prescribed by the Secretary of the Treasury; but fractional sections containing less than one hundred and sixty acres shall not be divided, but shall be sold entire: *Provided*, That this section shall not be construed to alter any special provision made by law for the sale of land in town lots." [Land Laws, 1 part, 323.]

By a Circular of the 10th June, 1820, addressed to the Surveyors General, in pursuance of the act of the 24th April, 1820, "the Secretary of the Treasury directs that fractional sections containing more than one hundred and sixty acres shall be divided into half quarter sections, by north and south, or east and west lines, so as to preserve the most compact and convenient forms." "It is not intended to run the subdivisional lines, and mark them, but merely to make them upon your surveys, and calculate the quantity of land in each subdivision." [Public Lands, 2d part, 820.]

The Commissioner of the General Land Office, in a letter to the Surveyor General of Mississippi, under date the 20th January, 1826, remarks, that prior to the act of April, 1820, fractional sections were not liable to be subdivided. After referring to the Circular of the 10th June, 1820, he says: "The substance of the rule is, that the fractional sections of one hundred and sixty acres and upwards, are to be subdivided by east and west, or north and south lines, (at the discretion of the surveyor,) so as to preserve the most compact and convenient form.

Each lot to be *as nearly as practicable*, a half quarter section, containing the quantity of eighty acres; sometimes rather more, sometimes less, as the locality demands." [Land Law, 2d part, 854.] In a letter from the same to the same, of the 28th July, 1831, instructions substantially similar, are repeated. [Ib. 922; see also, ib. 933.]

The regularity of the survey of the fractional section now in question was brought to the view of the Attorney General of the United States by the Secretary of the Treasury in 1837, and his opinion given thereon. He says that the instructions on the 10th June, 1820, in relation to fractional sections, "as I am informed, has been understood in the General Land Office, and by the Surveyors, to authorize the course adopted by the Surveyor General in the present case; and I shall assume that it did so. I make this assumption because the Department is perfectly competent, and best qualified to construe its own instruction; and because, unless such was its meaning, no question of law under the act of 1820, could well arise for my consideration, for if the instruction required, as contended by the counsel for Mr. Etheridge, that all the regular half quarter sections of which the fractional section is susceptible, shall be actually formed, then the survey should have been set aside for its non-conformity to the instruction.

"The matter is then narrowed to the question whether the instruction of 1820, construing it as the Surveyor General has done in the present case, is a legal and valid exercise of the discretion committed to the Secretary of the Treasury, by the act of the 24th April, 1820, above quoted. It will readily occur that to authorize me to pronounce an instruction of this nature, issued immediately after the enactment of the law, and acted on for so long a period, illegal, the objection should be a very clear one. This is by no means the case in the present instance."

The Attorney General then concludes that the division of the section into two fractions of more than eighty acres was in conformity both to the law and instructions, although it was practicable so to have divided it as to have made a quarter section, leaving a residuum both on the north and east. This conclusion was influenced by these reasons:

1. If Congress had intended that fractional sections should,

*at all events*, be divided into half quarter sections, when their shape admits it, they would have said so in explicit terms, and the discretion confided to the Secretary would have been confined to the residuary parts of the section.

2. The clause in the first section of the act of 1820, concerning fractional sections containing less than one hundred and sixty acres, (which are not to be divided,) shows that Congress did not deem it indispensable that regular half quarter sections should, *in all practicable cases*, be formed by the surveyors; on the contrary it shows that they preferred a single tract, though containing more than eighty acres, and though capable of forming a regular half quarter, to small and inconvenient fractions.

3. The pre-emption laws did not change the general system established for the survey of the public lands.

The view taken of this matter by the Attorney General is so very clear and satisfactory as not to require amplification. It shows that the division of the section is authorized by law, and even if it was not, then it should have been set aside by the Department as irregular. The description of the land by quantity, is in general much less conclusive than by courses and distances, or metes and bounds to indicate the precise tract; but these in turn yield to more satisfactory *indicia* of locality. In the case before us, the patent designates the number of acres, and refers to the official plot of survey of the section returned to the General Land Office, by the Surveyor General. Now although a quarter section of lands is a parcel defined as to quantity, the form and contents of which are regulated by law, yet these descriptive terms are not so potent as to override and control all others that may be found in connection with them. Here the patent conveys *eo nomine* a quarter section, though it contains in fact but little more than half that quantity *according to the official survey;* these latter terms of description must be wholly inoperative, or serve to limit the land granted to the western subdivision of the section; that the latter conclusion is the most consonant to reason and authority is what we cannot doubt. [Cheny v. Slade's adm'r, 3 Murphy's Rep. 82; Blake et al v. Doherty et al, 5 Wheat. Rep. 359.]

The sales of the Government lands are made according to

subdivisions of sections, or fractions, actually made on the ground, or to lines traced on the maps prepared in the office of the Surveyor General; hence, a patent issued to a purchaser, refers to the official plot of the survey, returned to the General Land Office, and according to this will the patentee take.

Supposing the subdivision of the fraction in question to have been made according to law, and the recital of the quantity of land sold to Etheridge will show, that he did not purchase a quarter section; and if the official plot was irregular it should have been set aside by the Department, and the proper steps taken in order to its correction.

Upon a view of the case, I am satisfied that the subdivision of the fractional section was in conformity to law, and if it was not, the plaintiffs cannot recover more land than is embraced by the patent under which they claim. The consequence is, the judgment of the Circuit Court is affirmed.

---

NOTE.—Judges GOLDTHWAITE and ORMOND being interested in the decision of this case, did not participate therein.