# MAYOR AND ALDERMEN OF MOBILE v. THE HEIRS OF FARMER.

1. The power given to the registers and receivers by the different acts of Congress, to determine between conflicting and interfering claims, and to direct the manner of locating and surveying them, applies only to confirmation of imperfect grants made by the former proprietors of the country. These officers have, therefore, no power to locate and direct the survey of a disputed line, where one of the parties claims by virtue of a complete and unconditional grant; as in the case of the donation to the corporation of Mobile of the hospital and bake-house lots, by the act of 26th May, 1824.

ERROR to the Circuit Court of Mobile.

Ejectment by the defendant in error against the plaintiff in error. The plaintiff below, to sustain his case, introduced in evidence a patent from the United States to the lessors of the plaintiff for certain land in the city of Mobile, and proved that the premises sued for were within the lines of the patent.

The plaintiff also read the deposition of James Magoffin and certain proceedings of the land office at St. Stephens in relation to the boundary of the lot known as the "Bake-house lot"; and other testimony proving the heirship of the parties, which need not be stated.

The defendant relied on the act of Congress of 26th May, 1824, "Entitled an act granting certain lots of ground to the corporation of the city of Mobile, and to certain individuals of said city"; and offered to prove that the lines of the Bake-house lot in the city of Mobile at the date of the act, comprised the *locus in quo.* The plaintiff objected to this evidence on the ground that the transcript of the record, attached to the evidence of James Magoffin, in which the limits of the Bake-house lot had been ascertained by him, was conclusive. The court sustained the objection, and excluded the evidence; and charged the jury that the heirs of Robert Farmer were entitled to the property described in their patent; that the corporation was entitled to the Bake-house lot; but that the decision of the officers of the land office at

St. Stephens, was conclusive of the question. To which the defendant excepted; and which he now assigns for error.

CAMPBELL, for plaintiff in error. The title of the plaintiff in error arises under the act of 26th May, 1824, by which the "Bake-house lot" is vested in them. This act amounts to a complete grant, and any question arising upon it, is a judicial, and not a political one. What lands are included in the grant, is not a question for the land office, but the court. [6 Cr. 128; 8 id. 244, 9; 6 Peters, 741; 12 id. 454; 14 id. 414; 3 Dall. 456.]

The defendant's title is inferior. The patent bears date in 1837; the terms of renunciation are in *presenti*, and no evidence of title prior to 1824, is presented.

The register and receiver at St. Stephens were not authorized to settle conflicting rights. Their power is exhausted by the settlement of the question of location for the purposes of the land office. Whether that location is accurate, so far as third persons, who claim by a grant previous to the act of location are involved, is a question which can only be settled by the parties themselves, or by courts of justice. [Instructions and Opinions of the Land Office, Part 1, 455, § 5, 6; 6 Peters, 735.]

PHILLIPS, for defendant in error. The title of the heirs of Farmer is derived from the act of 1822. Under that act, the certificate of the register and receiver was made and confirmed by Congress, and the plat of survey made; the title, therefore, is older than that of the plaintiff in error, which commenced in 1824.

The effort now, is to show that the north line, as fixed by the plat of survey confirmed by the act of 1822, was too far to the north. If the confirmed report, instead of being specifically located, had described it generally as the lot of Farmer's heirs, and in 1824, a donation to the plaintiff of the lot known, in Spanish times, as the "King's Bake-house lot," reserving the rights of others, under such circumstances, an inquiry, ordered by the common grantor, and his decision thereon as to the boundary, ought to be conclusive as a mere declaration of a fact which always existed. The more especially as the opposite party submitted to the jurisdiction, examined witnesses, and contested their rights.

ORMOND, J.—By the act of the 26th May, 1824, the United States granted to the mayor and aldermen of the city of Mobile, "all right and claim of the United States to the lots known as the hospital and bake-house lots, containing about three-fourths of an acre, in the city of Mobile." [1 Land Laws, 398.]

On the 14th November, 1837, a patent issued from the general land office in favor of the heirs of Robert Farmer upon a confirmation of a claim made by virtue of the act of 8th May, 1822, [1 Land Laws, 352,] which among other designated boundaries, calls for the "south boundary of the bake-house lot," as one of the boundary lines of the land conveyed by the patent; and the controversy in this case is, what is the south boundary of the bake-house lot. To establish this boundary, the plaintiffs rely upon a decision made by the register and receiver at St. Stephens, which they insisted, and the court below held, to be conclusive of the fact.

The right of these officers to determine this question, is attempted to be derived from the various acts of Congress giving them power to determine between conflicting and interfering claims, and, also, to direct the manner of locating and surveying the lands, the title to which had been confirmed. [See Land Laws, Part 1, 348, 352 and 455, and other acts to which these were supplementary.]

- There can be no doubt that Congress may attach to a pure donation such terms as it pleases, and may invest the subordinate officers of the United States with power to determine questions of fact, and to ascertain and settle conflicting claims. Of this, the different pre-emption laws furnish examples. Whether it has such power in relation to the confirmation of imperfect titles derived from the former proprietors of the country, is a question which does not arise in this case.

The power conferred on the registers and receivers to decide upon conflicting claims, relates only to confirmations of imperfect titles derived from the French, British and Spanish governments; but the grant of the bake-house lot to the corporation of Mobile, was an unconditional donation of all the right and title of the United States in and to the thing granted, which immediately passed to the grantee. The previous acts of Congress, therefore, giving to the registers and receivers power to ascertain and settle the boundaries of conflicting *confirmed* claims, have no ap-

plication; and it was not competent for Congress to attach such a condition to it subsequently, and it has made no such attempt, The description of the thing granted in the act, is sufficient to distinguish it from other lots in the city; and by the aid of extrinsic testimony, its boundaries may be ascertained.   [Blake v. Doherty, 5 Wheaton, 359.]

By the treaty, the United States acquired all the title of the crown of Spain to these lots as public property.   The question, then, is, what was the boundary of these lots in the Spanish times? This is a question of fact, and if a controversy should arise in relation thereto between the corporation and others claiming title to the adjoining lots, it can only be settled by those tribunals appointed by the constitution and the laws for that purpose, unless the parties interested should voluntarily submit to some other mode.

We are relieved in this case from the necessity of considering whether the recital in the patent of Farmer's heirs of the boundary line, would be conclusive, because the patent does not profess to locate the north boundary line other than by calling for the "south boundary of the bake-house lot."   The precise location must, therefore, be ascertained by testimony showing where the south line was when in the occupancy of the crown of Spain. Such as its limits then were, it passed by the treaty to the United States; and with those limits, it was granted to the corporation.

It results from this examination, that the court erred in determining that the decision of the register was evidence of the boundary line of the bake-house lot; and its judgment is, therefore, reversed, and the cause remanded,