## MAYOR AND COUNCIL OF CHAUNCEY *v.* BROWN, administrator.

1. Where the question whether a given deed is good as color of title depends upon whether it covered the land in dispute, and its terms are in this respect ambiguous, parol evidence is admissible to show that it did in fact apply to such land.

2. Where an administrator, with the consent of the heirs of his intestate (he being one of them), makes an agreement with the widow, by the terms of which he permits her to remain in possession of a portion of the lands of the intestate, with the understanding that she shall have the use and occupancy of the same during her life, at the termination of her right to possession, whether the same results from her death or other cause, he may in his representative capacity maintain against a stranger an action to recover possession wrongfully withheld.

3. Where, by the terms of the agreement under which she thus enters, the right of the widow is limited to the use of the land for farming purposes only, whether she be treated as a tenant for life or a licensee, if she by herself, or another by her permission, appropriates the land or any part thereof to other and inconsistent uses which in their nature seriously impair its value, to the injury of the freehold, and to the injury of those entitled in reversion, such use operates as a forfeiture of the life-estate, or a revocation of the license, as the case may be, and the administrator is thereupon entitled to re-enter.

4. There was no material error in admitting evidence, nor in the charges complained of, and the evidence as a whole was sufficient to show title in the plaintiff's intestate. Under the facts appearing in the record, and in view of the rules of law above announced, the plaintiff was entitled to recover the premises in dispute, and the specific damages found by the jury for the destruction of trees; but the recovery of "damage and rental, $75.00," was not warranted, and unless the same is written off, the verdict should be set aside. This matter has been covered by an appropriate direction.

Argued November 30,—Decided December 7, 1896.

Complaint for land. Before Judge Smith. Dodge superior court. March term, 1896.

*DeLacy & Bishop*, for plaintiff in error.

Atkinson, Justice.

Reuben Brown, as the administrator of Henry Brown, brought complaint for land against the Mayor and Council

of the town of Chauncey, alleging, that he was the duly appointed administrator upon the estate of Henry Brown, that Henry Brown was the owner of a tract of land lying within the corporate limits of the town, and that the mayor and council had taken possession of a portion of it, and refused to account to him for rents and profits. In addition to this there was a count for trespass, alleging that the municipal authorities, having entered in possession of the land, had caused to be opened up a street thereon, cutting and grading through the land a considerable distance, and cutting down and removing therefrom a considerable quantity of timber, estimated in the declaration to be of the value of $100.00, or other large sum. A demurrer was filed to this declaration, which was overruled; but inasmuch as no exceptions *pendente lite* were taken to the judgment overruling the demurrer and the bill of exceptions was not itself filed within the requisite time, we cannot and do not undertake to consider the questions made thereby. The plaintiff's claim of title rested upc prescription, the prescription being based upon a deed, a copy of which is as follows:

"The State of Georgia, Twiggs County. This indenture, made this fifth day of December in the year of our Lord eighteen hundred and fifty-three, between Willis F. Lamb of the State and County aforesaid, duly constituted administrator of the estate of Reuben Lamb, late of said State and county, deceased, of the one part, and Henry Brown of Montgomery of the [other] part, witness that, whereas, by virtue of an order granted by the honorable inferior court of said .court [county] when sitting for ordinary purposes, previous notice of application having been given agreeable to the statute in such case made and provided, on the fifth day of December last, to said Willis F. Lamb, administrator as aforesaid, to sell a tract of land belonging to the estate of said deceased, situate, lying and being in the county of aforesaid, known and distinguished as lot number (309) three hundred and nine in the 13th district, containing two hundred two and a half acres, with the rights, members and

appurtenances thereto belonging, after the said tract of land was duly advertised in conformity to law the same was put up and exposed to sale to the highest bidder at the door of the court-house at Jacksonville in said county within the legal hours of sale on the first Tuesday in December last passed, by said Willis F. Lamb, administrator as aforesaid, when said tract of land was knocked off to said Henry Brown at the sum of two hundred and fifty dollars, he being the highest and best bidder: Now for and in consideration of the said sum of two hundred and fifty dollars' cash in hand paid to said W. F. Lamb, administrator as aforesaid, by him said Henry Brown, at and before sealing and delivering of these presents, the receipt whereof is hereby acknowledged, the said W. F. Lamb, administrator as aforesaid, hath granted, bargained and sold and by these presents doth grant, bargain and sell unto the said Henry Brown, his heirs, executors and administrators, and assigns, the said tract of land (No. 309) three hundred and nine in the thirteenth district of said county, with all the rights, members and appurtenances thereunto belonging or anywise appertaining, unto him said Henry Brown, his heirs, executors, administrators, and assigns, to his and their own proper use, benefit and behoof, forever in fee simple. In witness whereof said W. F. Lamb, administrator as aforesaid, hath hereunto set his hand and affixed his seal, the day and year above written. Willis F. Lamb, adm'r. (L.S.)

"Signed, sealed and delivered in presence of
D. J. Hughes, James M. Lamb, William Haskins, J. P."

Entries on back of above deed:

"Deed from Willis F. Lamb, adm'r, to Henry Brown, for lot No. 309 in 13th dist. Telfair, 202½ acres.
"Georgia, Telfair County.    Clerk's office, Sup'r Court, May 23rd, 1854.
Recorded in Book N. No. 14, pages 42 & 43.
Fee 75c.                    John F. McRae, Clk."

To the introduction of this deed the defendant objected, upon the ground that upon its face it did not purport to convey to plaintiff's intestate the premises for which the action was brought, but that according to its descriptive terms it applied to land elsewhere.   To meet this objec-

tion, plaintiff was permitted to prove the possession by his intestate of the premises in dispute since about the time the deed bears date, and that he found the deed itself among the intestate's papers after his death. He was further permitted to prove that Jacksonville, the place at which, according to the recitals in the deed, the sale in pursuance of which it was made, was in Telfair county, and was the county seat of that county, and that there was no such place as Jacksonville either in the county of Twiggs or the county of Montgomery. In addition to this the plaintiff offered in evidence the chain of titles, including the original grant from the State down to the intestate of Willis F. Lamb, but there being a breach in the continuity of this chain of titles, in consequence of the absence of certain orders authorizing the administrator to sell, the deed from Lamb to himself was offered as color of title, and the other deeds as a circumstance, for the purpose of identifying the land intended to be conveyed by the administrator to the plaintiff's intestate. To the introduction of this testimony objection was made, upon the ground that the deed spoke for itself, was unambiguous, and could not be aided by parol testimony. This objection was overruled, and the parol testimony and deeds above referred to, along with the deed in question, were admitted in evidence; and error is assigned upon this ruling of the court. Evidence was introduced to the effect that the plaintiff's intestate remained in possession of the lot of land, of which the premises in dispute constituted a part, from about the date of the execution of the deed referred to until his death, he dying in possession.

It was contended upon the part of the defendant, that the plaintiff had no right to recover, but that the right of recovery, if any, was vested in the heirs at law of the intestate; and in support of this contention, defendant submitted evidence to the effect, that subsequent to the death of the testator and after all the heirs had become of age, there being no debts against the estate, the heirs at law (the admin-

istrator himself being one of them) so authorizing, he made
an agreement with the widow of the intestate, by the terms
of which she was permitted to remain in possession and use
the premises as theretofore for farming purposes during the
remainder of her life.    The defendant showed further, that
there were no debts due and outstanding against the estate;
that while the administration was continuing, it was only
kept open for the purposes of this suit, and for the disposi-
tion of the land of which the premises in dispute constituted
a part.    It was shown by the defendant, that while no reg-
ular proceedings of condemnation were had or taken, it had
entered upon the premises and constructed the road or
street with the permission of the widow, the tenant in pos-
session, she actually assisting in removing the fences, so as
to enable it to prosecute the work it had in hand.    The
defendant likewise attempted to show that the adminis-
trator, the plaintiff in this case, assented to this arrange-
ment, assisted in the location of the street at the point at
which it was subsequently constructed, and interposed no
objection to its construction.    Touching the conduct of the
administrator thus sought to be shown, there was a conflict
in the testimony.    There was evidence submitted, showing
the value of the timber cut from the premises.    Aside from
this, there was no evidence showing separately the value of
the premises for rent, or any other damage to the same, for
which a verdict might have been found.    The jury upon
the trial of the case found a verdict in favor of the plain-
tiff for the premises in dispute, and "damage and rental
$75.00, and value of timber cut $10.00."    The defendant
moved for a new trial, which motion was overruled, and it
excepted.

1.  Complaint is made of the ruling of the court in ad-
mitting parol evidence for the purpose of identifying the
land sued for with the land described in plaintiff's deed.
Under our code it is a rule of evidence, that parol evidence
is admissible to explain ambiguities in written instruments,

whether those ambiguities be latent or patent. Under this rule, we think the testimony offered was properly admitted. The deed in question appears to have been executed in the county of Twiggs, and in describing the land it thereafter refers to the county in which it is located as "said county" and the "county aforesaid." The county of Montgomery is referred to in the deed, and later it recites that on a given day Willis F. Lamb, the administrator, was authorized to sell the tract of land belonging to the estate of the deceased, lying in the "county aforesaid," and further, that thereafter the land was duly advertised in conformity to law, and put up and exposed to sale to the highest bidder at the court-house in Jacksonville, in "said county," and the plaintiff's intestate being the highest and best bidder, the same was knocked off to him, and so the administrator conveyed to him the said tract of land No. 309 in the 13th district of said county. That plaintiff's intestate bought from Lamb, administrator, a tract of land corresponding in number and district to the one of which the premises sued for is a part, cannot be open to question. It is doubtful, however, whether it lay in the county of Montgomery, or the county of Twiggs, or the county of Telfair. *Therein* consists the ambiguity, and to explain this ambiguity parol evidence was receivable. This is not a case in which the grant is void because of an insufficient description. It is true that the description contained in the deed is inadequate to the identification of the premises, when we look to the deed alone to ascertain the thing sold. Description is necessarily a matter of degree; the rule in such cases being, "The description of the property conveyed in a deed is sufficiently certain when it shows the intention of the grantor, and makes its identification practicable." 12 *Ga.* 431.

In the case of Blake *v.* Doherty, 5 Wheat. 359, the rule is laid down: "It is undoubtedly essential to the validity of a grant, that there should be a thing granted, which must be so described as to be capable of being distinguished from

other things of the same kind.   But it is not necessary that the grant itself should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed." In the present case, with the aid of parol testimony, it was perfectly practicable to ascertain the intention of the grantor as to the premises which he sought to convey. Lot No. 309 in the 13th district was the lot he desired to convey, and that lot was one belonging to his intestate. Accompanying the deed he delivered to the plaintiff's intestate was a chain of titles from the State of Georgia down to and including the deed to Lamb's intestate. These deeds showed that Lamb's intestate owned a lot of land in Telfair county corresponding in number and district with the one he sold to plaintiff's intestate.   This land was sold at Jacksonville, which was the county seat of Telfair county, at which place this sale took place.   It is, therefore, that where, in the conveying clause of the deed, the administrator uses the word "said" in describing the county in which the land lay, he may well have intended by that expression to refer the *locus* of the thing sold, not to the place of the execution of the deed, which was in Twiggs county, but to the place where the administrator's sale took place, in Telfair county.   We think the evident ambiguity in the expressions used in the deed was open to explanation by parol, and the court did not err in admitting the evidence offered for that purpose.   See *Jennings* v. *The National Bank of Athens et al.,* 74 *Ga.* 782.

2. It was insisted in the present case that, under the evidence submitted, the right of recovery was in the heirs at law, and not in the administrator upon the estate of the intestate.   The intestate died in possession of the premises, having held it in the neighborhood of forty years under the deed to which we have heretofore referred.   Section 2485 of the code provides that, "Upon the appointment of an administrator, the right to the possession of the whole estate is in him; and so long as such administrator contin-

ues, the right to recover possession of the estate from third persons is solely in him." It would seem, therefore, that there being an administrator upon the estate of the intestate, the sole right of recovery is vested in him, nor is that right divested because of the fact that, with the consent of the other heirs of the intestate, he permitted the widow to retain possession of the premises during her natural life. This was not equivalent to an abandonment of his right to administer. It is not such as the case would have been had he voluntarily abdicated in favor of the heirs and permitted them to dispose of the property in this way. In the ordinary course of administration, he would not have had the power to make this disposition of the property of the estate; but where there are no creditors to complain, and all the heirs are of full age, and they consent to his act, he is not bound by the strict rules that obtain in the due and orderly administration of estates. Under such circumstances, he may well permit the widow to remain during her life, and enjoy the fruits of the estate unadministered, without becoming answerable to the heirs, and without yielding his right as against the heirs, and as against third persons, to the ultimate possession for the purposes of administration. In such a case, at the happening of the event upon which the tenure of the widow determines, the administrator's right of re-entry, in his official capacity, is complete.

3. In the present case, the right of recovery in the administrator depends upon whether the term has expired during which the tenure of the widow was to continue. According to the evidence in this case, she had an interest during her life in the use of the premises for farming purposes. According to her contract with the administrator, the measure of her term was the balance of her natural life. The interest that she took was either that of a life-tenant or a licensee. If she took as a life-tenant, she was entitled to enjoy the life-estate in such a way as would give her the right to apply the property to such uses as it might be

properly applied without injury to the freehold, and without injury to those entitled in reversion. If she were entitled as a mere licensee, the uses to which she could apply the premises were limited to those embraced in the act of granting the license. It appears from the evidence in this case that the property was adapted to, and used for, agricultural purposes alone; and in his contract with her, by which the administrator parted with the present possession of the premises, the jury could properly find under the evidence that the agreement contemplated only the use by her of the premises for such purposes. Taking the evidence most strongly in favor of the defendant upon that point, we find that it entered with the consent of this life-tenant, or this licensee, and appropriated the property which she held for agricultural purposes alone, to the entirely inconsistent use of constructing a public highway thereon. The construction of this highway upon the premises involved an injury to the freehold, and injury to the estate of those entitled in reversion. It was waste; and our code provides, that where a tenant for life commits such waste, the life-estate becomes then forfeited, and he who is entitled to the possession in reversion may immediately re-enter. The same is true with reference to a licensee who oversteps the limit of the privilege contained in his license. His right is measured by the terms of the license under which he enters, and if he exceed his license, to the injury of the licensor, the latter may revoke the license and re-enter. So that in the present case, whether we treat the person with whose consent this street was constructed as a life-tenant, or a licensee, her interest was determined by the appropriation of the premises to the inconsistent use of converting the same into a public highway, and the administrator was entitled to re-enter.

4. Upon the evidence submitted, the jury could properly find in favor of the plaintiff the premises in dispute. The mere fact that they were occupied by the municipal author-

ities of a city was no impediment to the maintenance of an action of ejectment. By proper condemnation proceedings it may appropriate, upon paying just compensation therefor, private property to public use; but we know of no reason why, if a municipal corporation unlawfully enter upon the land of another, and appropriate it to its own use, whether for streets or otherwise, an action of ejectment may not be maintained in order to determine the question of title and the right to possession.

There was evidence from which the jury might properly have found $10.00 for damages by way of compensation for the trees cut from the premises occupied by the defendant; but upon a careful examination of the evidence which was submitted upon the trial, we find no evidence which will uphold the special finding of $75.00 for "damage and rental"; and hence we affirm the judgment in the court below, upon condition that when the *remittitur* is entered the plaintiff shall write off from the verdict the item so recovered, otherwise the judgment shall stand reversed.

*Judgment affirmed, with direction.*