Sewall, C. J.
The demandant’s title is derived from the proprietors of Balcerstown — a grant by the General Court of the late *185 provincial government of the territory now known as the state of Massachusetts. The grant was made in June, 1765, of a township seven miles and a half square, in the unappropriated lands, to be laid out adjoining to some former grant, and to the eastward of Saco River, and a plan thereof to be returned. In October of the same year, this grant was confirmed to Samuel Gerrish and others, according to a plan taken and returned by Joseph Noyes, with the usual provisoes or conditions, that the tract surveyed did not exceed the quantity of seven and a half miles square, exclusive * of allowance for water, nor interfere with any former [ * 199 ] grant.
On the 8th of March, 1777, the General Court of the state of Massachusetts granted to Alexander Sheppard unappropriated lands, to contain three miles square, circumscribed by sundry grants which are mentioned, and among the rest the grant to Gerrish and others of the location called Bakerstoum. The grant to Sheppard was confirmed to him June 24, 1779, as beginning at a stake seven and a quarter miles north-west from a beech-tree standing in the head line of New Gloucester, and four miles north-east from the north-west corner of New Gloucester, thence running north forty-five degrees east twelve miles, &c.
The tenants derive their title to the lands defended by them from Alexander Sheppard; and the principal question examined at the trial was, whether the premises in controversy were to be considered as within the location of Bakerstown, or the location under the grant to Sheppard.
At the trial, a plan, taken by order of Court, and with the consent of the parties, was considered as conclusive evidence upon this question. By that plan, and the testimony of the surveyor, it was made to appear that a line drawn seven and a quarter miles (with certain allowances in addition) distant north-west from the head line of New Gloucester, according to the admeasurement of Mr. Burnham, the surveyor employed under the order of Court, would include the premises in controversy in the grant to Sheppard, which, it is admitted, are within the line forming the south-easterly side of his patent, if that admeasurement determines the location. And upon this ground a verdict was taken for the tenants.
The demandant was not permitted to controvert the truth of the survey and admeasurement returned in the case by the sworn surveyor. Evidence tending to show mistakes therein, either in the principles by which the surveyor was governed, or proving other surveys and admeasurements, militating in their result with the survey returned * and attested by Burnham, [*200] was offered at the trial, and rejected. The exceptions *186 apply more particularly to this decision of the judge who presided at the trial.
The further examination which has been had of this case has led to the opinion, that {he decision of the coi troversy between these parties does not depend upon the admeasurement of seven and a quarter miles from the head line of New Gloucester, whether that is to be regarded as proved conclusively by the plan and survey and testimony of Burnham or not. We shall not undertake, therefore, to determine, on 'this occasion, the quest-on immediately referred to us, how far evidence of that kind is in its nature conclusive, and uncontrollable by other testimony.
The location was, in the first instance, determined by the plan and survey of Noyes, of the tract of land confirmed to the proprietors of Bakerstown. At the time of the grant to Sheppard, the location occupied by the proprietors, and then known by the name of Bakerstown, was made the boundary on one side or the grant to Sheppard. In confirming that grant, the line between that location and Bakerstown is stated to be seven miles and a quart 'r north-west from the head line of New Gloucester. This was ir June, 1779, before Davis’s line was run. If the admeasurement supposed in the confirmation of Sheppard’s grant coincided with tl e occupation of the proprietors of Bakerstown, this act of the General Court was effectual, and settled the line between the two locatiors. And if it did not coincide, if the proprietors of Bakerstown, chiming under Noyes’s survey, and the confirmation pursuant to it, occupied farther north-west than seven and a quarter miles front the heat1 line of New Gloucester, it is my own opinion that the act of the General Court, in determining the south-easterly side of the grant ‘onfirmed to Sheppard, was ineffectual.
And there appears to me very sufficient evidence, from subsequent transactions, for a presumption that, in fact, ¡ his admeasurement did not coincide with the location to the Bakerstoivn proprietors, as it was then occupied by them. * 201 ] * Because, after this confirmation, and upon in inquest of office instituted for the commonwealth, another line farther north-west (I allude to Davis’s line) was assumed as a line within their location. And by the judgment of this Court won that process, this line was assigned to the proprietors of Bakersi own, as the extent north-westwardly of the grant to them ; and the extent north-eastwardly of the same location was assigned air -' in remenee to that boundary.
It is my opinion that this location was conclusiv not c 'y as a decision between the commonwealth and the Ba. erstown oroprietors, but also conclusive against all persons claim, -r unde/ the *187 commonwealth by any subsequent grant, and bounded southeastwardly thereon, especially as all the grants by the General Court, and certainly that to Sheppard, contain this reservation or limitation expressed therein, viz., provided that this location does not interfere with any former grant. Subsequent grantees are therefore concluded by the boundaries finally assigned by judgment of law to any prior location, as privies, even when not parties, to a judgment between the commonwealth and the proprietors of any former grant or location, (a)
But it is not necessary to insist on this ground, in deciding the question submitted in this case ; for the Court are entirely satisfied that a new trial is not to be granted upon these exceptions, even if maintained at law; because justice is done by the verdict in this case, taken as submitted to us upon the whole evidence.
In this view, it is not important to the tenants whether the premises defended by them were to the north-west or to the southeast of the true dividing line between Bakerstown and Sheppard’s grant. If being within Davis’s line, that is, to the south-east of it, the premises were within the boundaries and location finally assigned to the proprietors of Bakerstown, yet, by the proviso in that assignment, operating, as we think, to make certain exceptions from it of particular lands in the occupation of settlers, the tenants are entitled * against the demandant. The [*202] evidence is, according to the most probable result, that they were settlers on the land before the running of Davis’s line, and so are within the terms of the proviso and exception. But if, before the judgment referred to, the tenants, or those under whom they claim, were in the occupation of the land defended, claiming under a written contract with Sheppard, dated prior to the running of that line, the tenants are settlers, or the assigns of a settler, within the equity of that proviso, (b)

Judgment on the verdict.

 Commonwealth vs. The Heirs of Andre and Billon, 3 Pick. 224. — Adams vs. Barnes, 17 Mass. Rep 365. — Cushing & Al. vs. Hackett, 10 Mass. Rep. 164.— Cook vs. Allen, 2 Mass. Rep. 462. — Inhab. of Worcester vs. Green, 2 Pick. 245.

 Pernam vs. Wead, 6 Mass. Rep. 131. — Howe & Al. vs. Bass, 2 Mass. Rep. 380. Aiken vs. Sanford, 5 Mass. Rep. 494. — Davis vs. Rainsford, 17 Mass. Rep. 207