## ROSE *v.* DAVIS *et al.*

Where a party takes possession of a part of a tract of land under a deed of convey-
ance to the whole, and at the time of entry no one is holding adversely, such
possession will extend to the whole tract described in the deed.

A decree of confirmation of a grant by the United States Land Commission and the
United States District Court, cannot be impeached in an action of ejectment
between a party claiming under the grant and a third party.

Possession of the grantor under whom the plaintiff claims inures to the benefit of such
plaintiff.

A party purchasing land cannot acquire, by such purchase, any greater right than his
grantor possessed, and where such grantor entered upon the premises under a con
tract for lease, he is subject to the same estoppel as a tenant.

The rule of estoppel, which prevents a tenant from disputing his landlord's title,
extends to all persons who enter upon premises under a contract for a lease, and
to all persons who by purchase, fraud or otherwise, obtain possession from such
tenant.

A private survey is no legal evidence of the facts it purports to contain, since, if it
were, any man might recover the land of another, by including it in his own
boundaries.

When a private survey is admitted as a diagram, but not as evidence, the Court should
clearly explain to the jury the precise purpose and effect of its admission.

The survey or map of the United States Surveyor of a grant, is inadmissible as evi-
dence to establish boundaries, without proof of the orders or authority under
which he acted.

APPEAL from the District Court of the Tenth Judicial District,
County of Yuba.

This was an action of ejectment to recover a tract of land in Yuba
County. Plaintiff claimed by title deraigned from the grant of one
Sutter, and his possession under it. Trial by jury on complaint and
answer, putting in issue title and possession. There was a dispute as
to whether the *locus in quo* was within the boundaries of the Sutter
grant, and of the land conveyed to plaintiff, which was part of the
Sutter grant. In order to make out his case, the plaintiff offered in
evidence the map of J. W. Higgins, of a survey of a tract of land
called the Linda tract, it being a private survey made under the
orders of the claimants of the Linda tract for the purpose of showing
that the land in dispute was embraced in said survey of said Higgins ;
and also offered a map made by one Von Schmidt, claiming to be a
deputy surveyor of the United States, for the purpose of showing
what was claimed to be the eastern line of the grant, before referred
to, from the Mexican Government to John A. Sutter ; and to the

introduction of each of said maps counsel for defendants made the following exceptions : 1. That the map of Higgins was a private survey. 2. That there was no proof that it was made by consent of the defendants, or any of their grantors, or upon notice to them, or any of the grantors, or by order of the Court.

The Von Schmidt map was objected to as inadmissible : 1. Because no law of the United States, or order of· a Court of competent jurisdiction within the United States, or any order of instruction of any Department at Washington, connected with the business of the United States for this State, or any other order, instruction or authority whatever, of either the Federal Government or the State Government, or any other instruction or authority was shown, authorizing the said survey or map to be made, or to be used in evidence in any Court of Justice of the State of California.    2. That no notice upon the defendants or grantors was shown before the making of the said survey as to the same, and no consent of the defendants was shown, or their grantors, to the making of said survey.

The Court ruled that the Higgins survey and map might go in evidence as a diagram, and the said Von Schmidt's map and survey be admitted as evidence.

After the close of the testimony, the Court, at the request of the plaintiff, gave the jury the following instructions :

1st. That if the jury believe the land claimed by the plaintiff is embraced in the boundaries named in the deed from John A. Sutter to Rose, Reynolds and Kinlock, and that they took possession of a part of the tract purchased by them from Sutter, claiming the whole, and that no one at the time of the entry held adversely, then their entry and possession are deemed in law co-extensive with the whole tract purchased by them.

2d. That the decree of confirmation of the grant to John A. Sutter by the United States Land Commission and the United States District Court, cannot be impeached in this suit.

3d. That the possession of the three, Rose, Reynolds and Kinlock, the grantors whom the plaintiff claims, inures to the benefit of the present plaintiff.

4th. That Joseph L. Davis did not, by his purchase from Richard

Rose, acquire any greater right than Rose himself possessed; and that Rose, having entered upon the premises upon a contract for a lease from Rowe, was subject to the same estoppel as the tenant, and could (not) have disputed Rowe's title.

5th. That the same estoppel which prevents a tenant from disputing his landlord's title, extends to all persons who enter upon premises upon a contract for a lease, and to all persons who by purchase, fraud or otherwise, obtain possession from such tenant.

The Court gave several instructions at the request of the defendants' counsel, but refused to give the fourth asked by the defendants' counsel, which is in these words:

4th. " A demarcation, or private survey, made by direction of a party interested under the grant, is inadmissible evidence, because it would enable the grantee to fix a vagrant grant by his own act."

Plaintiff had verdict and judgment, and the defendants appealed to this Court.

*Bryan & Filkins* for Appellants.

The errors of the Court below are embraced in the refusal of the following instructions asked for by defendants' counsel, and refused by the Court.

The Court was asked to instruct the jury as a fourth instruction, as follows:

" A demarcation, or private survey, made by direction of a party interested under the grant, is inadmissible evidence, because it would enable the grantee to fix a vagrant grant by his own act."

This was certainly most pertinent to the case, and was *refused*.

The language of the instruction is precisely in the language of the opinion of Chief Justice Marshall, and a majority of the Supreme Court, in the case of Blake *v.* Dougherty, 5 Wheaton, 364 and 365.

On page 365 of the case last cited, the Court says:

" This private survey might have been made on any other part of the West Fork of Cane Creek with as much propriety as on that where it has been made. It would have been equally admissible if placed any where else on that stream. To allow it any weight would be to allow the grantee to appropriate, by force of a grant, lands not

originally appropriated by that grant.  This would subvert all those principles relative to conveyances of land which we have been accus- to consider as constituting immutable rules of property."

In Surget v. Little, 5 Smedes & Marshall, 330 and 331, Chief Jus- tice Sharkey reviews the whole doctrine, and holds that in no case can a mere private survey bind parties who do not consent to the sur- vey.   See James Leesee v. Stookey, 1 Wash. C. C. Rep. 330 ; Chirac v. Reinecker, 2 Peters, 619, and other cases reviewed with favor by Chief Justice Sharkey in the above opinion.

In Bearce v. Jackson, 4 Mass. Rep. 410, Chief Justice Parsons in passing upon this point uses the following language in the close of his opinion :   " A plan taken *ex parte* can never be used but as chalk, unless by consent."   Upon the same doctrine is the case of Gerrish v. Beard, 11 Mass. Rep. 193.

It would be an unheard-of doctrine, to announce that an *ex parte* private survey should be evidence of boundary between two litigants.

As Chief Justice Marshall and Judge Sharkey say, this would be to allow a man to make his *title* in the shape of a survey or boundary. The boundary would be the limit of the conscience of the party or his surveyor ; a dangerous standard to trust, perhaps, in this country.

So much for the private and *ex parte* Higgins survey.

We say that the survey of Von Schmidt, the deputy surveyor of the United States, is *equally* inadmissible before the patent has issued to the claimant, and before he is ordered to proceed by the Govern- ment of the United States to segregate the private land which may be claimed from the lands of the General Government.

We hold this position to be self-evident, that the government officer who acts without authority of law, his act is to be considered in no other light than that of a private individual.   It would be idle to say that Von Schmidt or any body else can dispossess me of land by his mere act of making a survey, without law, without orders, and without employment, except that of the party opposed to me in a suit.

The Act of March 3d, 1853, Congress of the United States, to provide for the survey of public lands in California, section 3, provides that the Surveyor General shall have the same powers as are conferred upon the Surveyor General of Louisiana, and can survey private

claims to separate them from the public lands when they are " confirmed." The Sutter claim, Sutter himself says in the testimony before quoted, is not located, and he does not know where he will locate it. It is pending in the Supreme Court of the United States, and no authorized survey under the Act can be made until the claim is " confirmed," plainly referring to a final confirmation of the title, as the Louisiana Act referred to provides.

The Act is a limitation of his powers, as well as a proscription of his duties. He cannot survey until final confirmation, because the Supreme Court of the United States may throw the claim out, and in that case it is all governmental land, and there is none to segregate. Wood's Digest, Appendix, p. 748, sec. 3.

Where the Act last referred to says :

" He shall also cause all private claims to be surveyed after they have been confirmed, so far as may be necessary to complete the surveys of the public lands :" the grant of power to survey after confirmation is to deny that power, so far as the Government is concerned, before a final confirmation. The old maxim of law will apply here and govern " *Expressio unius est exclusio alterius.*" But in any event he is limited by the language to make " such surveys only so far as may be necessary in the completion of the surveys of the public lands." They must show this to be that case, which they fail to do. Wood's Digest, p. 748, sec. 3.

The same authorities are referred to upon this point as upon the survey of Higgins, which was merely a private survey and had no shadow of authority.

*Reardon, Mitchell & Smith* for Respondent.

As regards the map of Von Schmidt. This map is presented to the Court with all the evidences of authenticity, and of its being a map of a survey taken in accordance with all the requirements of the Act of Congress and the decree of confirmation to Sutter. It is not pretended that it does not include the land in controversy ; it is evidence in all Courts of the United States ; it is conclusive against the United States for any claim to land within its boundaries ; and it will scarcely be contended that it is not evidence, we might add " conclu-

9

sive evidence," against sheer squatters on what they supposed to be government land, not even claiming right to preëmption.    It may be proper to notice, *passim*, a sort of side argument, that the decree in favor of Sutter does not appear to be a final confirmation, within the words of Act of Congress before cited.    We reply that the contrary nowhere appears.    It would be a waste of time to contend, therefore, that the confirmation by the United States District Court was and is a final confirmation, or to argue that the Surveyor General was not bound to await the last possible day for perfecting an appeal to the Supreme Court of the United States, before proceeding to discharge the duties imposed on him by the law of Congress.

The appellants proceed to a formal assignment of errors.

I. The Court was asked to instruct the jury as a fourth instruction, as follows :

" A demarcation or private survey, made by direction of a party interested under the grant, is inadmissible evidence, because it would enable the grantee to fix a vagrant grant by his own act."

" This was certainly most pertinent to the case," say the counsel, " and was refused."

We deny the pertinency, because :

1st. The map in question was not made by direction of a party interested under the grant.

2d. Because the reason, to wit : " that it would enable a grantee to fix a vagrant grant by his own act," does not apply.    In this case there is no pretense of any attempt to fix a vagrant grant by any act of the grantee or others.

It will be perceived that the language of Chief Justice Marshall, so carefully followed in the words of instruction, was used in the case of Blake *v.* Dougherty, &c., 5 Wheaton, 364, 365.    In which, a certain grant of public domain called vaguely for the West fork of Cane creek, the waters of Elk river, &c.; and the plaintiff relied on a grant admitted to contain the lands in controversy.    The defendants claimed under a prior grant, and exhibited what is called " a demarcation," which the Court understood to mean a private survey made by direction of a party interested under the grant, and which had the effect to locate the prior on the location of the subsequent grant, by

Rose *v.* Davis.

the act of the party interested. It was, in short, the act of a party locating a " vagrant grant." Accordingly, the Court say : " This private survey might have been made on any other part of the west fork of Cane creek, with as much propriety as on that where it had been made. It would have been equally admissible if placed any-where else on that stream."

The reason for the exclusion of such testimony is therefore obvious, but that reason is clearly not applicable to this case.

So also in the case of Snages *v.* Little, 5 Smedes & Marshall, 330, 331. The point presented does not arise in this case.

The Court there decided that, knowing judicially that most of the lands in the State had been surveyed, they would not permit a private map to be introduced, with proof that it conformed strictly to the map or survey in the land office. The Court saying : " Whether it did so conform was a question for the jury, and it was susceptible of better proof than was offered," &c.

The only point there decided was that the best evidence should be produced, or a reason given for not producing it.

In the case of Bearce *v.* Jackson : (4 Mass. Rep. 408, 409, 410) " The plaintiff offered in evidence a plan of the land described in the declaration, accompanied by the oath of the surveyor who took it, attesting its accuracy." The Judge refused to admit " the plan, because a plan including the lands in question had been taken by order of the Court, and with the consent of the parties to this action, which was proved to be correct," &c.

But we may save time by admitting, in the very words of appellants' counsel, that " it would be an unheard-of doctrine *to* announce that an *ex parte* private survey should be evidence of *boundary between two litigants.*"

The Higgins map was not used as evidence for any such purpose ; for this reason, if no other, that there was no question of boundary between the two litigants. We submit, therefore, that the Court did not err in refusing to grant this particular instruction, more especially as all that was material in it had been embraced in the instructions granted by the Court.

BALDWIN, J., delivered the opinion of the Court — TERRY, C. J., concurring.

This was an ejectment to recover a tract of land in Yuba. Plaintiff claimed by title deraigned from the grant of Sutter, and his possession under it. Trial by jury on complaint and answer, putting in issue title and possession. There was a dispute as to whether the *locus in quo* was within the boundaries of the Sutter grant, and of the land conveyed to plaintiff, which was part of the Sutter grant. In order to make out his case, the plaintiff offered in evidence the map of J. W. Higgins of a survey of a tract of land called the Linda tract, it being a private survey made under the orders of the claimants of the Linda tract, for the purpose of showing that the land in dispute was embraced in said survey of said Higgins ; and also offered a map made by one Von Schmidt, claiming to be a Deputy Surveyor of the United States, for the purpose of showing what was claimed to be the eastern line of the grant, before referred to, from the Mexican Government to John A. Sutter ; and to the introduction of each of said maps, counsel for defendants made the following exceptions :

1. That the map of Higgins was a private survey.

2. That there was no proof that it was made by consent of the defendants, or any of their grantors, or upon notice to them, or any of the grantors, or by order of the Court.

The plaintiff's counsel introduced the Von Schmidt map, which was objected to as inadmissible :

1. Because no law of the United States, or order of a Court of competent jurisdiction within the United States, nor any order or instruction of any Department at Washington, connected with the business of the United States for this State, nor any other order, instruction or authority whatever, of either the Federal Government or the State Government, or any other instruction or authority was shown authorizing the said survey or map to be made, or to be used in evidence in any Court of Justice of the State of California.

2. That no notice upon the defendants or grantors was shown before the making of the said survey as to the same, and no consent of the defendants was shown, or their grantors, to the making of said survey.

Rose v. Davis.

The Court ruled that Higgins' survey and map might go in evidence as a diagram, and that the said Von Schmidt's map and survey be admitted as evidence.

The Court, at the instance of plaintiff, gave several instructions, numbered from one to five in the record, which seem to us to be correct.

It gave several instructions at the instance of the defendants. These do not come up for review.

It refused the fourth instruction asked by the defendants, in these words: "A demarcation or private survey made by direction of a party interested under the grant is inadmissible evidence, because it would enable the grantee to fix a vagrant grant by his own act." This instruction was designed, doubtless, to apply to the Higgins map of survey, which, as has been seen, was admitted against the exception of the defendants. It will be observed that it was offered as evidence to establish boundaries, and the specific objection made to it by defendants was that it was inadmissible for that purpose; but the Court " admitted it to go to the jury as a ' diagram.' " Probably, as it was made a part of the complaint, and as it tended to show the jury more clearly than by verbal description the premises the plaintiff *claimed,* the Court did not err in permitting it to go to the jury for this purpose; but as it was offered for a different purpose, and as the jury might easily be misled as to the effect of it, the Court, under the circumstances, should have guarded them against any improper influence, by explaining more distinctly than by the general words used in overruling the objection, the precise purpose and effect of its admission. At any rate, the defendants had a right to have the direction of the Court, as sought in the charge, as to the effect of this paper. The Court, therefore, should have given the fourth instruction; for the law is too plain for controversy, that a private survey is no legal evidence of the facts it purports to contain; since, if it were, any man might recover another's land by including it himself, or getting some one else to do it, within his boundaries.

The objection to Von Schmidt's map was well taken for a like reason. No authority was shown for making the survey. The United States Surveyor, nor his Deputy, is not an officer generally empowered to

make surveys of private lands, which shall be evidence of title of boundaries. He may have special authority by orders of Court, or of the political department for that purpose — in which case the orders or authority given him are his warrant for the act; and this must be shown before his acts are effectual for any purpose of proof. The authorities which support these opinions are numerous. (See Blake v. Dougherty, 5 Wheaton, 364; 5 S. and M., 330, and cases cited in C. J. Sharkey's opinion, 4 Mass., 410.) But the principle upon which they rest is too clear to justify further citation.

There is nothing in the point as to the misapprehension of the jury as to the law as laid down by the Court; and the Court was right in giving no effect to these affidavits. (Hansberger v. Kinney, 6 Grattan, 287; 4 Hump. 338.)

For the errors we have indicated, the judgment must be reversed and cause remanded.