WILLIAM F. MacCORMAC *vs.* WALTER F. MURPHY.

Middlesex. November 5, 1947. — January 5, 1948.

Present: QUA, C.J., DOLAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Res Judicata. Privity. Evidence,* Competency, Previous proceeding. *Estoppel.*

The important date in determining whether there was privity as a result of which one, claiming a title as successor in title to a party to a suit in equity, was bound by an adjudication in the suit against that party's title was the date of the commencement of the suit.

One, who had testified at the hearing of a suit in equity against a man and his wife for an accounting and the establishment of the title to certain pigs in a pig raising business conducted under a contract between the plaintiff and the male defendant, and who during the pendency of the suit purported to purchase and accepted delivery of some of the pigs from the female defendant, was in privity with her and was bound by a determination in the suit that she was agent for the male defendant and that the title to all the pigs in the business was in the plaintiff; and, in a subsequent action of tort by the same plaintiff against the purchaser for conversion of the pigs delivered to him, the purchaser was precluded from disputing the plaintiff's title to such pigs.

Mere knowledge, on the part of the plaintiff in a suit in equity for determination of the title to pigs in a pig raising business carried on under a contract between the plaintiff and the defendant, of the fact that about sixteen months before the suit was brought the defendant had sold and delivered pigs to a third person, did not estop the plaintiff from relying on a final decree in that suit establishing his title to all the pigs in the business and from maintaining against the third person an action of tort for conversion of pigs delivered to the third person by the defendant in the suit under a purported sale during the pendency of the suit.

The record of a suit in equity which determined the plaintiff's title to certain goods was admissible to show that determination in an action for conversion of the goods afterwards brought against one bound as a privy by such determination.

Tort. Writ in the Superior Court dated August 27, 1943.

The action was heard by *Good,* J., without a jury.

*J. G. Bryer,* for the defendant.

*J. W. Eastman,* for the plaintiff.

Wilkins, J. In this action of tort for the conversion of pigs the principal question is whether the defendant, who purchased the pigs from one Flynn after the plaintiff had filed a bill in equity against Flynn, Flynn's wife, and the owner of the premises where the pigs were kept, was bound by certain facts litigated and determined in that suit. See *MacCormac* v. *Flynn,* 313 Mass. 547. This involves a subordinate question as to whether one fact so litigated and determined was that the plaintiff was the owner of all the pigs on the premises. The judge ruled favorably to the plaintiff in these respects, and found for the plaintiff in the sum of $4,680.20. The defendant's exceptions raising these questions are to the admission and exclusion of evidence and to the denial of certain of his requests for rulings.

Subject to the defendant's exception, the printed record for this court of the equity case was marked as an exhibit. This was admissible in order to determine what was in fact therein decided. *Saragan* v. *Bousquet, ante,* 14, 21, and cases cited.

The bill in equity was filed on June 24, 1941, and sought an accounting, the establishment of title to the pigs, and other relief in respect to a pig raising business conducted on the premises of one Sauvageau at 127 Summit Street, Peabody, under a contract between the plaintiff and Flynn. In the bill the plaintiff alleged that he was the owner of all the pigs "on the premises at 127 Summit Street." In the answers of the Flynns this allegation was denied, Flynn in addition alleging that the pigs were the property of Annie G. Flynn, his wife.

The final decree, entered on June 16, 1942, contained the following: Flynn "should have" in his possession on

the premises of Sauvageau nine hundred forty pigs, together with their offspring, which were or had been the property of the plaintiff. The defendants were "indebted" to the plaintiff in the sum of $11,280 for the conversion of those pigs. The defendants were "ordered forthwith to disclose to the receiver the present location of any pigs heretofore on the premises used by Michael J. Flynn and Annie G. Flynn, of Emile Sauvageau at 127 Summit Street, Peabody, Massachusetts, or, if the pigs . . . [had] been sold or disposed of to any person or persons whatsoever, the name or names of such person or persons, the number of pigs so sold, the date of such sale, and the amount received therefor." The defendants were ordered to disclose to the receiver the names of any persons who, with their knowledge, had taken "any of the pigs, the subject matter of this litigation." The defendants were ordered to "deliver to the receiver any and all pigs which they . . . [had] removed from the premises," or which they might have at any place in their possession, or which might be in the possession of any person for the benefit of the defendants.

In the case at bar the plaintiff testified that after the decree he recovered only three hundred fifty-six pigs from the Flynns; and that the value of the pigs he did not get was more than $4,600. The defendant, called as a witness by the plaintiff, testified that he had previously been a witness at the hearing of the equity suit, and knew of its pendency on July 17, 1941; and that between July 28, 1941, and May 12, 1942, he purchased from Annie G. Flynn a number of pigs on the Sauvageau premises. The defendant called as witness Annie G. Flynn, who testified that she was the wife of Michael Flynn; that from 1937 on she had a piggery on the Sauvageau property, which was divided by a driveway; and that she kept her pigs on the right hand side of the driveway. The defendant sought to show that these were the pigs he purchased and that they were his property, but the judge ruled that he was prevented from doing so by the record in the equity suit.

The defendant's contention that it was not adjudicated in the equity suit that the plaintiff was the owner of all

the pigs on the premises arises largely out of the fact that there were two master's reports. In the first report it was stated in terms that all the pigs on the premises let by Sauvageau to Flynn were the property of the plaintiff. The defendants brought in objections, and the report was recommitted, chiefly for the purposes of the accounting. The master filed a second report, purporting to be complete in itself, which was, in major part, identical with the earlier report, but omitted the statement as to ownership of all the pigs, and contained detailed accounting figures. An interlocutory decree was entered confirming "the master's report." We think that this referred merely to the second report.

We are of opinion, however, that the second report actually related to all the pigs on the premises and that the final decree established the fact of the plaintiff's exclusive ownership of such pigs. That fact not only was in issue on the pleadings, but was the subject of testimony and of findings of the master. The latter found that there was a road running through the premises with housing for pigs on either side; that Annie G. Flynn acted as agent for her husband; that on February 1, 1940, Flynn sold all his own pigs to the plaintiff; and that Flynn told the plaintiff, "I sold all the pigs we have up here now and everything is yours. Everything is yours up here now." The conclusion is inescapable that in the equity suit it was litigated, and by the final decree determined, that Annie G. Flynn owned no pigs on the premises, and that the property in all the pigs was in the plaintiff exclusively. To this extent at least, the adjudication is binding upon all the parties to the equity suit and upon those in privity with them. *Corbett* v. *Craven,* 193 Mass. 30, 36–37. *Newburyport Institution for Savings* v. *Puffer,* 201 Mass. 41, 46. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 148. *Hopkins* v. *Holcombe,* 308 Mass. 54, 57. See *Mellen* v. *Modern Parlor Frame Corp.* 321 Mass. 305, 309. Freeman, Judgments (5th ed.) § 438. The defendant as successor in interest to Annie G. Flynn is in privity with her. *Gerrish* v. *Bearce,* 11 Mass. 193, 201. *Adams* v. *Barnes,* 17 Mass. 364. *O'Neil*

*v. Topping,* 242 Mass. 534, 537. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 211, 218; *Cleaveland* v. *Malden Savings Bank,* 291 Mass. 295, 299. The important date in determining a purchaser's privity is the date of the commencement of the suit. *Dull* v. *Blackman,* 169 U. S. 243, 248. *Old Colony Trust Co.* v. *Omaha,* 230 U. S. 100, 122. *Chase National Bank* v. *Norwalk,* 291 U. S. 431, 438. *Carroll* v. *Goldschmidt,* 83 Fed. 508, 509 (C. C. A. 2). *Rowe* v. *Hill,* 215 Fed. 518, 521 (C. C. A. 6). Freeman, Judgments (5th ed.) § 440. Restatement: Judgments, § 89; also (c), (d), (f). See *Stone* v. *Stone,* 179 Mass. 555, 567–568; *O'Neil* v. *Topping,* 242 Mass. 534, 537.

The defendant's last point is that the plaintiff is estopped to set up the earlier adjudication because of alleged acquiescence in the transactions between Annie G. Flynn and the defendant and of failure to inform the defendant "of any change in the situation." On cross-examination the plaintiff testified that he went to the Sauvageau premises from time to time; that he saw the defendant there in February, 1940, loading pigs onto the defendant's truck; that he knew at the time that the defendant was buying pigs from the Flynns at the premises, but said nothing about it; and that this was the only business transaction with the defendant that he saw conducted at the piggery. Later when the defendant was on the stand, certain evidence of his dealings with Annie G. Flynn was offered by him and excluded, but he did not seek to show that the plaintiff knew of them. It is hard to see how the plaintiff could be estopped to rely upon the decree by reason of knowledge of one transaction which antedated the bill of complaint and which was not one of the sales concerned in this action for conversion. At the very most, it presented an issue of fact, which has been decided against the defendant by implication in the general finding for the plaintiff. See *National Development Co.* v. *Gray,* 316 Mass. 240, 251–252, and cases cited.

What we have said covers all the defendant's exceptions, detailed recital of which is unnecessary.

*Exceptions overruled.*