## MURPHY, Respondent, vs. HALL, Appellant.

*January 15 — February 1, 1887.*

*Tax sales: Description of land: Certainty: Constitutional law: Special legislation.*

1. Ch. 105, Laws of 1881, provides that each parcel of land in the city of Oconto subject to taxation shall be fully described in numerical order in a book called the assessor's book, and shall also be known and designated in such book by numbers, thus: Part ——, of lot ——, of section ——, etc.; that such book shall be *written up an-*

*nually* by adding thereto or *changing* all descriptions of parcels of land which have, by subdivision or otherwise, become liable to taxation since the book was last written up; that a map corresponding to such book shall be kept as a public record in the office of register of deeds, and shall also be written up and corrected annually; that in all the assessment and tax rolls, and in all advertisements, certificates, papers, conveyances, or proceedings for the assessment and collection of taxes, and proceedings founded thereon, any description by number shall be held to include the description written at length in the assessor's book, and any conveyance describing real estate by such number shall be legal and binding in all respects as if described by metes and bounds. Notwithstanding such act it is *held* that a description in tax certificates of land in the city of Oconto, as " Part 5 of lot 4 of section 20, town 28 north, of range 22 east," without referring to said act or to any book or map made in pursuance thereof, or to any other record, plat, or description, is so indefinite and uncertain as to be fatally defective.

[2. Whether said ch. 105, Laws of 1881, is void as contravening secs. 31, 32, art. IV, of the constitution, not determined.]

APPEAL from the Circuit Court for *Oconto* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an appeal from an order overruling a demurrer to the complaint for insufficiency, in an action to foreclose three several tax certificates purporting to be issued on three several sales of the same land, each to Oconto county, by the county treasurer thereof, at the dates, respectively, May 16, 1882, May 15, 1883, and May 20, 1884, and each purporting to be for the nonpayment of the taxes, interest, and charges due on said land for the year previous to such sales respectively. The only description of such land in either of said certificates is as follows, to wit: " Part 5 of lot 4 of section 20, town 28 north, of range 22 east."

The complaint alleges that the land so described was " situate, lying, and being in the city and county of Oconto, Wisconsin;" and also that the land so sold as aforesaid is that part of lot 4 of section 20 of township 28 N., of range

22 E., described by metes and bounds as follows, viz.: "Commencing at northeast corner of highway and Jones street; running thence north, along Jones street, 177 feet and 4 inches; thence east 137 feet and 4 inches; thence south 163 feet and 2 inches; thence westerly along the line of highway to place of beginning;" but the same was assessed for taxes, and returned, advertised, and sold, as part 5 of lot 4 of said section 20, and was described in said certificate as aforesaid, in virtue of the provisions of ch. 105, Laws of 1881, that being the manner and form in which said piece of land above described by metes and bounds is referred to and described in the assessor's book of the city of Oconto, in said act provided for, all the provisions of which ch. 105 above referred to, providing for the making and keeping of a book to be known and designated as the "Assessor's Book of the City of Oconto," and of a map of the city of Oconto, and a duplicate copy thereof, having been complied with; and such a book and maps having been made and kept as required by the terms of said act, prior to the making of the tax assessment for the taxes of 1881 of the real estate subject to taxation in said city for said year. The complaint also alleges that the plaintiff purchased and became the owner and assignee of said certificates, and still was such owner; that no part of said taxes for either of said years had been paid, and no part of said land had been redeemed therefrom, but that the amount for which the land was so sold in each of said years, with interest thereon at twenty-five per cent. per annum from the dates of said sales respectively, was due and payable; that the defendant was the owner and in possession of the land. The complaint also contained the usual prayer for relief in such cases.

For the appellant there was a brief by *Fairchild & Fairchild*, and oral argument by *Mr. H. O. Fairchild*.

For the respondent there was a brief by *Webster & Wheeler*, and oral argument by *Mr. Webster*.

CASSODAY, J.   It is urged that the description of the land
in each certificate is so indefinite and uncertain as to be fa-
tally defective.   This is virtually conceded to be true, unless
the description is aided by the "Act to regulate the descrip-
tion of real estate for the purposes of assessment and taxation
in the city of Oconto."   Ch. 105, Laws of 1881.   By that
act all the real estate in the city subject to taxation was re-
quired to be correctly and fully described, in numerical order,
in a book to be kept for that purpose in the office of the
register of deeds, to be known and designated as the "As-
sessor's Book of the City of Oconto" (sec. 1); and to "be a
part of the public records of Oconto county and city, of the
same legal force with other public records of real estate, to
effect the purposes of this act" (sec. 2).   The city council
was required by the act to cause such book *to be written up
annually* by *adding thereto or changing all descriptions of* lots
or parcels of real estate which should, by subdivision or
otherwise, become liable · to taxation subsequently to the
times, respectively, when such book should be *last* so writ-
ten up.   Sec. 3.   Each and every parcel of real estate in the
city liable to taxation, and which had been conveyed by
metes and bounds prior to the time when such book should
be so written up, was thereby required to be described
therein, as nearly as might be, in the words of the deed by
which it had been conveyed of record; and any lot which had
not been so conveyed by deed when such book should be
so written up, or which was not then numbered upon a
recorded plat, was thereby required to be described in such
book by a correct and pertinent description, to be obtained
if necessary by the employment of a competent surveyor;
and no description was to be deemed insufficient by reason
of the use of abbreviations or figures or signs commonly
used in describing land.   Sec. 4.   Each and every lot and
parcel of land described in such book, as provided in section
4 of the act, was also required to be known and designated

in said book by numbers, thus: " Part [1 or other number], of lot ―― [or other government subdivision], of section ――, township ――, range ――;" or " part [number], of lot ――, block ――, in ――'s addition to the city [or village] of Oconto." Sec. 5. In all the assessment and tax rolls, and in all advertisements, certificates, papers, conveyances, or proceedings for the assessment and collection of taxes, and proceedings founded thereon, any such " description by number" was thereby declared to "be sufficient," and to " be held to include and be a part of the description of the same lot or parcel of land written at length upon " such book. Sec. 6. A map of the city of Oconto was thereby required to be kept in the office of the city clerk, and a duplicate thereof in the office of the register of deeds, upon which every lot or parcel of land in said city was thereby required to " be correctly drawn and designated," and which duplicate maps were thereby required to " be written up and corrected *annually*, so as to correspond with " such newly written up and corrected book; and the same were thereby declared to " be a public record, in connection with, and as a part of, the records of assessment and taxation in said city." Sec. 7. Any conveyance or instrument in writing, by which any estate or interest in real estate in the city of Oconto is created, aliened, mortgaged, or assigned, or by which the title to any real estate in said city may be affected, in law or equity, describing such real estate or interest therein by numbers as therein provided, is thereby declared to " be legal and binding in all respects as if described by metes and bounds." Sec. 8.

In discussing the question of an alleged indefinite and uncertain description of land in a tax deed, it was said in *Meade v. Gilfoyle*, 64 Wis. 18, that " the ambiguity in the description here consists in reference to records, documents, and descriptions outside the deeds, and which were necessarily to be regarded as a part of the description. This was

a latent ambiguity." And then, in view of the statute declaring that "in all advertisements, certificates, papers, or proceedings relating to . . . the assessment and collection of taxes and proceedings founded thereon, . , . any description of lands which shall indicate the land intended with ordinary and reasonable certainty, and which would be sufficient between grantor and grantee in an ordinary conveyance, shall be sufficient " (R. S. sec. 1047; Laws of 1881, ch. 268), it was, in effect, held that extrinsic evidence was "admissible in the case of *such tax deeds*, the same as it would be in the case of an ordinary conveyance between grantor and grantee." That case was there distinguished from those where the lots, blocks, and addition appeared to be perfectly described on the face of the tax deed, but the recorded plat revealed the fact that there were no such lots and blocks in the addition named, although there were such lots and blocks in a different addition; and also from that other class, where there was no complete description given in the deed, nor any reference therein to any other record, document, plat, or description capable of being proved by extrinsic evidence, and thus making certain what would otherwise have been uncertain; as in *Johnson v. Ashland Lumber Co.* 52 Wis. 458; *Campbell v. Packard*, 61 Wis. 88.

Here neither of the certificates contain any complete description of any land, nor is there any reference in either of them to ch. 105, Laws of 1881, or any assessor's book or map made in pursuance thereof, or any other record, document, plat, map, or description whatever. The contention of the learned counsel for the plaintiff is to the effect that, as the assessor's book is required by the act to have a complete description of each and every parcel or lot of land (sec. 4), and that each and every lot or parcel of land so described should "also be known and designated in said book by numbers " (sec. 5), as indicated, and then that "any description by number" as aforesaid should "be sufficient"

and "held to include and be a part of the description of the same lot or parcel of land *written at length upon the assessor's book*" (sec. 6), such book and its corresponding map must be regarded as a part of each certificate, and that, so regarded, the description in each would be complete, definite, and certain.

It was not held in *Delorme v. Ferk*, 24 Wis. 201, nor *Meade v. Gilfoyle, supra*, that a statute might supply an entire want of description; but merely that any description in a tax deed which indicated the land intended with ordinary and reasonable certainty, and which would be sufficient between grantor and grantee in an ordinary conveyance, would be sufficient. This is on the theory that the law will not declare a description void for uncertainty when the light which contemporaneous facts and circumstances furnish renders it definite and certain. *Docter v. Hellberg*, 65 Wis. 421. "It is undoubtedly essential to the validity of a grant," said MARSHALL, C. J., "that there should be a thing granted, which must be so described as to be capable of being distinguished from other things of the same kind. But it is not necessary that the grant itself should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed. Almost all grants of land call for natural objects, which must be proved by testimony consistent with the grant, but not found in it." *Blake v. Doherty*, 5 Wheat. 362.

Undoubtedly a tax deed or a tax certificate must be construed with reference to existing statutes. In other words, statutes may be enacted for the purpose of aiding descriptions in tax proceedings. But it does not necessarily follow that such statutes may entirely dispense with all description, or subject the same to an annual change by a city council or its selected agencies, in conformity with a fictitious standard or model devised to satisfy the convenience or caprice of some official or agent. The contention is, in

Murphy vs. Hall.

effect, that by the act in question the legislature did devise such fictitious standard or model, by way of giving to the initiated special significance to arbitrary "parts" or "numbers," to be placed in "numerical order," and each and every lot or parcel of land in the city to be known and designated simply by such number or part, as stated. One of the most vicious features of such fictitious standard or model is the annual change or readjustment thereof, as made necessary by the assessor's book and the corresponding map being written up and corrected annually by adding thereto and changing and correcting descriptions therein. By virtue of such annual change or readjustment of such fictitious standard or model, and upon the assumption that the number by which the land is to be designated in each tax certificate, certificate of redemption, and tax deed is the one last applied to any particular piece of land, it is easy to conceive how a lot or parcel of land might be designated in the assessment or tax roll by one number, and the next year the same land, or some part of it, in the advertisement and certificate of sale by an entirely different number, and then, perhaps a year or so afterwards, in a certificate of redemption by a still different number, and finally in a tax deed by a still different number. But if such assumption is unfounded, and the designation in each advertisement, certificate, paper, conveyance, or proceeding for the assessment or collection of taxes (sec. 6) is to be the same number mentioned in the assessment and tax roll upon which it is founded, then the confusion might still be great; for, in case of delinquencies in the payment of taxes for several successive years, there might be a corresponding multiplicity of numbers, with each separate number used to designate the same land in a variety of papers. This would render a designation by a mere number without significance. True, each of the certificates of sale in question states the particular year for which the taxes were due and

unpaid. But neither states the precise time, nor even the year, when such fictitious designation therein employed became fixed. We may assume, for the purposes of this case, the possibility or even the probability of ascertaining with certainty the land supposed to be represented by such fictitious designation, by the aid of an expert in such matters. The same would be true of a correct description in a foreign language. But, even upon such assumption, is not such fictitious designation well calculated to deceive and mislead the unlearned, the unwary, and in fact almost everybody owning land in the city, except those whose business or interest has induced a thorough familiarity with such matters?

But all the land in the city may not be owned by residents of the city. Presumably it is not. A nonresident of any city or the state may own land in a dozen cities and other parts of the state. If Oconto can have an independent, fictitious designation, then each of the other cities may devise an entirely different fictitious standard, thus making the confusion of such land-owner worse confounded. Of course, the purpose of taxation is revenue. This should be secured, however, without subjecting the owners of property to unnecessary burdens. Before the title to land should be divested by tax proceedings, the owner should have a full and fair opportunity for hearing, payment, and redemption. In such proceedings, the land should be described with sufficient particularity to afford the owners and others interested the means of identification without misleading them. Cooley on Taxation, 404 *et seq.* One of the objects of tax proceedings, and especially notices, posters, advertisements, etc., is to give owners and all others interested an opportunity of being heard and due notice that the title is to be ultimately divested unless the tax is paid or the land redeemed. Hence it has often been held that such tax proceedings, taken together, are in effect " due process

of law," within the meaning of the constitution. Sec. 1, art. XIV, Amendments, Const. U. S.; *Baldwin v. Ely*, 66 Wis. 188–191, and cases there cited. But to hold that every owner of real estate in the city is bound, not only to know the provisions of the act in question and the first fictitious designation of every part of his land or any subdivision thereof under it, but also each and every annual change and readjustment of the same without any reference thereto in any such assessment, tax roll, advertisement, certificate, paper, conveyance, or proceeding for the assessment and collection of taxes against the same, is to hold that he has constructive notice of what, to the great mass of people, is concealed information, and that there may be due process of law in divesting title to land by such tax proceedings without any practical or known opportunity for a hearing, payment, or redemption. This would be worse than no attempt at notice, for it misleads and deceives. Some of the mischiefs of such an act, under such a construction, may be imagined, when we consider that if the owner should be so bound all subsequent purchasers of the land would be equally bound. The result would be that each and every such purchaser would not only be compelled to ascertain whether his grantor had a clear title to the land as described in his deed, but also whether there was or had been any tax deed or tax incumbrance by any and every such fictitious designation which had ever been so applied to such land. Such a holding would, in a limited sense, frustrate one of the objects of the recording acts, which is to protect *bona fide* purchasers for value. It would be in its effect, to some extent, similar to the change of public records of title by authority of law. Thus, in addition to the uncertainty and indefiniteness of such fictitious designation, we find that correct descriptions in conveyances are thereby rendered unreliable. Certainly, no strained liberality of construction should be resorted to in order to perpetuate

O'Reilly vs. Milwaukee & Northern R. Co., Garnishee, etc.

an act so fraught with public mischief and private wrong. We must hold that the description in each of the tax certificates in question is too indefinite and uncertain to give any substantial information to the land-owner or others interested. The same was presumptively true respecting the description in the advertisement upon which the sale was made and the certificate issued.

The view we have taken of the case renders it unnecessary to determine whether ch. 105, Laws of 1881, is in contravention of the amendment to art. IV of the constitution of the state, which, among other things, provides:

" Sec. 31. The legislature is prohibited from enacting any special or private laws . . . (6) for assessment or collection of taxes, or for extending the time for the collection thereof; (7) for granting corporate powers or privileges, *except to cities.* . . .

" Sec. 32. The legislature shall provide general laws for the transaction of *any* business that may be prohibited by section thirty-one of this article, and *all* such laws *shall be uniform in their operation throughout* the state."

The gravity of such a question suggests the propriety of reserving its determination until imperative duty requires.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.