EDGAR E. MATTESON, Collector of Taxes *vs.* WARWICK & COVENTRY WATER CO.

JANUARY 22, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson and Parkhurst, JJ.

(1) *Taxes. Time of Assessment. Time of Rendering Account.*

Gen. Laws cap. 46, § 6, provides: "Before assessing any tax, the assessors shall post up printed notices of the time and place of their meeting in three public places in the town for three weeks next preceding the time of such meeting, and advertise in some newspaper published in the town, for the same space of time. Such notices shall require every person and body corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate describing and specifying the value of every parcel of his real and personal estate at such time as they may prescribe."

The electors of the town of Warwick, November 17, 1903, ordered a tax to be assessed on the 31st day of December, 1903. The assessors gave notice requiring all persons liable to taxation to bring in their accounts, at sessions of the board held at various dates between December 14 and December 19, 1903, and stated that for the purpose of assessing such tax the assessors would meet December 31st, 1903, at 4 o'clock P. M.:—

*Held,* that the electors are authorized not only to levy a tax, but to order the time when it shall be assessed and paid; and the assessors are required to assess and apportion the same at the time ordered by the town, under Gen. Laws cap. 46, §§ 1 and 4.

*Held,* further, that this time was fixed by the town as December 31, 1903, necessarily implying that the ownership and valuation on that date should constitute the only true basis for the assessment.

*Held,* further, that, as no taxpayer could render on oath a statement on, or before December 19, of the property which he had on December 31, no opportunity was offered any taxpayer to be heard thereon.

*Held,* further, that the time for rendering an account must follow the day and hour established for the valuation and ownership of the ratable estate of the taxpayer, in order that he may be able to render a true and exact account thereof, as required by statute.

(2) *Description of Property in Assessment Roll.*

| Name. | Description. | Real estate value. | Total valuation. | Amount of tax. |
|---|---|---|---|---|
| Warwick & Coventry Water Company..... | Pipes in street........ N. E. Part lot 2 on A. K. Barnes plat $1/_{26}$.. | 60,000 12,000 | ........ 72,000 | ........ $540 00 |

*Held,* that the object of the description is not only to inform the taxpayer what property is taxed as his, but also to inform the public, if sold for nonpayment of taxes, just what is liable for the tax and what is being conveyed for the non-payment of it.

*Held,* further, that the words, letters, and figures in the expression "N. E. part lot 2, on A. K. Barnes plat $1/_{26}$" were insufficient.

*Held,* further, that the expression "pipes in street 60,000" was too indefinite.

(3) *Validating Assessment. Misdescription. Defects in Description.*

Pub. Laws, cap. 920, § 4, provides: "No defect in description or mistake in valuation shall be taken advantage of by any taxpayer, unless he shall have brought in to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate at such times as they may prescribe for the assessing of the tax."

*Held,* that the statute did not cover a wrong description in the sense of precluding a taxpayer from contesting an assessment for a tax on land not owned by him, and while the words "a defect in description" would include an imperfect statement of the area, boundaries, etc., of a taxpayer's property, it would not include a misdescription.

*Held,* further, that, as the time prescribed for the making of the return was one which the assessors were not authorized to prescribe, a defendant could not be said to have failed to bring in his account if he could not do so because of the failure of the assessors to give valid and legal notice.

ACTION for the recovery of a tax.  Heard on exceptions of defendant, and sustained.

BLODGETT, J.  In this action for the recovery of a tax alleged to have been assessed against the defendant by the town of Warwick, in the year 1903, the plaintiff has recovered a verdict for the sum of $643.32, and the case is now before this court on defendant's exceptions to the regularity of the alleged ordering and assessment of said tax, as well as to the rulings of the court below on the trial of the cause.

The defendant's second request to charge was refused by the court, and is as follows: "That the notices posted by the assessors and the advertisement authorized by the assessors requiring the taxpayers to bring in to the assessors their accounts of their ratable estates must fix as the time or times for the taxpayers to bring their accounts to the assessors a time or times subsequent to the thirty-first day of December, 1903, at 4 o'clock P. M., and such notices and advertisement must inform the taxpayers that the assessors propose to take the thirty-first day of December, 1903, at 4 o'clock P. M., as the time of ownership and valuation in the assessment of said tax, and such notices and advertisement must require every person and body corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate owned by him on the thirty-first day of December, 1903, at 4 o'clock P. M., describing and specifying the value of every parcel of his real and personal estate."

The notice and advertisement therein referred to are as follows:

"WARWICK TAX, 1903.
"ASSESSORS' NOTICE.

"WHEREAS, The qualified electors of the town of Warwick, on the 17th day of November, A. D. 1903, ordered a tax of seventy-five cents on each one hundred dollars of the valuation of the real property in said town and the personal property belonging to the inhabitants thereof, and other ratable property therein to be assessed and apportioned on the 31st day

of December, A. D. 1903, and the undersigned have also prescribed said time for the assessment of said tax;

"Now, therefore, notice is hereby given that in accordance with said order, and in conformity with the law in relation to the assessment of taxes, every person and body corporate liable to taxation is required to bring in to the Assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate.

"For the purpose of receiving such accounts the Board of Assessors will be in session at their office in the Town Hall at Apponaug, in said town, Monday, Dec. 14; Tuesday, Dec. 15; Wednesday, Dec. 16; Thursday, Dec. 17; Friday, Dec. 18; and Saturday, Dec. 19, 1903, from 9 A. M. until 4 P. M.

"General Laws of Rhode Island, Chapter 46, Section 7:

"'Every person bringing in any such account shall make oath before some one of the Assessors, that the account by him exhibited contains, to the best of his knowledge and belief, a true and full account and valuation of all his ratable estate; and whoever neglects or refuses to bring in such account, if overtaxed, shall have no remedy therefor.'

"For the purpose of assessing said tax, the Board of Assessors will meet at their office on Thursday, December 31, 1903, at 4 o'clock P. M.

"William C. Tibbitts,
"John A. Belcher,
"Jacob A. Lockwood,
"*Assessors of Taxes.*

"Warwick, R. I., November 17, 1903."

The provisions of Gen. Laws cap. 46, § 6, are as follows: "Before assessing any tax, the assessors shall post up printed notices of the time and place of their meeting, in three public places in the town, for three weeks next preceding the time of such meeting, and advertise in some newspaper published in the town, if any there be, for the same space of time. Such notices shall require every person and body-corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate, describing and specifying the value of

every parcel of his real and personal estate, at such time as they may prescribe."

This exception obviously involves the construction of this section of the statutes.

It is clear that the qualified electors of the town are authorized not only to levy a tax but to "order the time when such tax shall be assessed and when the same shall be paid," and that the assessors are required to assess and apportion the same "at the time ordered by the town." Gen. Laws cap. 46, § § 1 and 4.

This time was fixed by the town as December 31, 1903, by the vote ordering the tax, and this vote necessarily implies and provides that the ownership and valuation on December 31, 1903, constitute the only true basis for the assessment. It is also clear that the assessors never gave any taxpayer any opportunity to render his statement of the property he claimed to be taxable on December 31, 1903, or of the valuation as he claimed it to be at that time; and inasmuch as no taxpayer could render on oath, between December 14 and 19, a statement of the property which he had on December 31, it follows that no opportunity was offered any taxpayer to be heard thereon.

In *Taft* v. *Ballou,* 23 R. I. 213 (1901), it was held by this court, affirming in that respect *McTwiggan* v. *Hunter,* 18 R. I. 776 (1895), that "Proceedings for the assessment of a tax are *quasi* judicial. Hence notice is essential to give validity to an assessment, and the statutory requirement as to notice is to be regarded as mandatory." It needs no argument to show that this notice must prescribe a time at which it is possible for the taxpayer to make the return required by law to be made by him, or else the statute is meaningless. In *McAdam, Collector* v. *Honey,* 20 R. I. 351 (1898), it was said by Matteson, C. J.: "The property of a tax-payer and his financial condition are liable to change from day to day. For this reason it may well be doubted whether notice to tax-payers to bring in their accounts in February would give validity to an assessment made so long afterwards as May 10th. *McTwiggan* v. *Hunter,* 18 R. I. 776. Moreover, to require the assessors

to follow all changes that might take place in the holdings of property while the preparation of the assessment roll was in progress would be exceedingly inconvenient, if not impracticable."

The obvious purpose of a notice of this nature is that the taxpayer may be heard before the board either as to ownership or valuation of property. But of what avail to the taxpayer is a hearing between December 14 and 19, which can only include and specify the property then owned, when he is to be and was taxed for such ratable estate as he had on December 31? That the account required by the statute is an account of the ratable estate of this defendant on December 31, 1903, is further evident from an examination of the statutory provision in case of its overtaxation.

The only remedy for overtaxation provided by the laws of this State is that given by cap. 46, Gen. Laws, and court and practice act, sections 1099 and 1100, providing for the filing of an account and for appeal to the Superior Court. And upon this appeal it will be noticed that the hearing must be upon the account thus rendered between December 14 and 19.

The language of Gen. Laws, cap. 46, § 17, thus defines the issues: "If on trial of said petition either with or without a jury, it shall appear that such person has wilfully concealed or omitted any property from his account, or has not placed a fair value thereon, the assessors shall have judgment and execution for their costs." That is to say, the issues on appeal are whether the taxpayer "has wilfully concealed or omitted any property *from his account* or has not placed a fair value thereon," or, under section 18, whether "a *true account* was given in." Thus the issues are seen to be only on the *account* rendered, and the only account which the defendant could render was one between December 14th and 19th, though actually assessed on the ratable estate owned by it on December 31.

We can not say that a taxpayer who is required to bring in an account between December 14th and 19th, and be heard thereon, and is then taxed for property claimed by the assessors to be owned by him on December 31, and at a valuation de-

termined not by him but by the assessors, has had such a hearing as the taxpayer is entitled to have, nor that an assessment thus made essentially differs from the taking of his property without due process of law. The words "before assessing any tax," in section 6 of chapter 46, *supra,* so obviously refer in this section to the completed assessment, dated, signed and deposited as required by law, that further discussion of them is unnecessary.

In the unreported case of *John C. Franklin, Collector,* v. *Warwick & Coventry Water Co.,* J. T. W. No. 1114, which was decided in 1903 by the present chief justice, sitting, without a jury, in the Appellate Division of the Supreme Court, and which was the basis of the decision in *Franklin, Collector,* v. *Warwick & Coventry Water* Co., 25 R. I. 384, upon a point which was held by the court to be decisive of the case, and in which opinion consequently the exact meaning of that part of the statute now under consideration was not passed upon by the full court, there are to be found the following observations, which we commend and adopt:

"The notice to bring in a statement of taxable property with an estimation of its value as it was at a certain time, is one of the provisions of this act which are evidently intended to benefit the tax-payer. One benefit which it thus obtains if no others are contemplated, is the privilege of disputing the amount of the assessment if it exceeds its own valuation. And so, under the decision in *Young* v. *Joslin,* 13 R. I. 676, it is mandatory upon the assessors. Whatever statutory provisions are made for notice and hearing, must be regarded as mandatory. Cooley on Taxation, 365. *Taft* v. *Ballou,* 23 R. I. 213. Now how can the defendant be required to return what property it had on different days to be subjected to the same tax? If two days may be designated a week, a month or a year may be; and during any extended period of time a person may own in succession many times the amount of property which he owns at any given point of time. Every change of ownership must occur on some one day. To make any assessment valid, and to distribute the burden of taxation fairly, all property subject to the same tax must be considered

with reference to the same time. A's property cannot be assessed as it was September 11th, and B's as it was September 12th. And whether or not the return of the assessors in 1899 fixed the true time of making the assessment, the law recognizes that there was such a time and the statute requires that the notice to this defendant should relate to it.

"A good deal of argument in the various cases between these parties has arisen on the subject of time, and the infelicities of expression in the general statutes have given rise to indefinite ideas which seem to some extent to have dominated the situation. Perhaps we may be able to define the expression, 'time of making the assessment,' so as to clear the subject at least partially.

"In assessing a tax upon the property liable to taxation in any town or city two references to time must inevitably be made.

"1st. Some point of time must be taken to which the values of all the property shall be referred simultaneously, and the value of each piece of property at that point of time must be estimated and affixed to it.

"2nd. Some period of time must be occupied by the assessors in the work of receiving statements, making the estimation of values, reckoning the tax and writing out and filing the roll.

"Both of these times may be called the 'time of making the assessment' or the 'time for assessing the tax,' but one is important to the tax-payer, and the other is not.

"It is obviously immaterial to the tax-payer when or during what period of time the work of the board of assessors is performed, except that portion of it which consists in receiving his return, but it is of the utmost importance to him to have his property valued as of the same time with other property in the town, and to know the exact time the assessors had in mind when fixing its value.

"At first sight it appears as if the legislature, recognizing the necessity of a definition of this time of assessment in the first sense, by a recent amendment to Chapter 45, had provided that the assessors should prescribe a time for assess-

ing the tax and that returns of property should be made as of that day.  Pub. Laws, cap. 920, passed November 22, 1901, two days after the passage of cap. 944.  On further examination, however, the requirement of this statute is by no means clear.  Does it mean that the property owner shall at any time he chooses bring in to the assessors a valuation of his property as of a time to be fixed by the assessors for assessing the tax or that he must bring in at the time prescribed by the assessors as the time of assessing the tax an account of his property, or are the words here 'for the assessing of the tax' used in a third sense, not relating to time but explanatory only of the object of the return?  This latter reading, though least in accord with the construction of the sentence, seems most reasonable.  So interpreted, the requirement is that for the assessing of the tax (i. e. to facilitate the assessment of the tax) the property owner shall bring in at such time as the assessors shall prescribe, an account of his property, with his estimate of its value, and this construction gives the statute the effect it was doubtless intended to have, namely to make the description of the assessors as well as their appraisal, conclusive, unless returns should be made, and not to change the law as to the time of the returns themselves.

"If either of the first two readings is correct, the rule in *McAdam* v. *Honey*, 20 R. I. 351, must be abandoned, and the rule in *Kettelle* v. *Warwick, &c.*, 24 R. I. 486, cannot apply except in those towns, if any there are, where the first day of the assessors' labors is also the last.  In neither case can the returns called for be made so as to satisfy the law in the cities and towns, where nine-tenths of the property of the people of the State is taxable.  Yet, the third reading suggested is a pretty violent inversion of the arrangement of the language. It cannot be that the time for assessing the tax here means the time in which the assessors shall do their work, for that would be to repeal sections 2 and 4 of chapter 46 by implication, which can never be presumed so long as any other construction is possible.  Cooley on Taxation, 294.

"I cannot avoid the conclusion that in attempting to screen the errors of some town officials, the legislature has thrown

uncertainty and confusion into the system of taxation through-out the State.

"It would seem proper and convenient for the town when ordering the tax to specify the specific point of time to which assessment values must be referred, and the statute certainly permits the towns to do this if they choose,—cap. 46, § 2.

"Such is the practice in the cities and several of the towns of the State.

"For example,—the resolution of the City Council of the City of Providence, ordering a tax for the year 1902, begins as follows:

"'Resolved, That the City Council hereby orders the as-sessment and collection of a tax on real and personal estate of one dollar and sixty cents on each one hundred dollars of the value thereof; said assessment comprises the following: For ordinary expenses One Dollar on each one hundred dollars, for interest and sinking funds, forty-three and one-half cents on each one hundred dollars; for the City's proportion of the State tax for the year 1902, which is hereby assumed, sixteen and one-half cents on each one hundred dollars.

"'The Board of Assessors shall assess and apportion said tax on the inhabitants and ratable property in said city on the first day of July, A. D. 1902, according to law, and conformably to the rules and regulations of the City Council, and shall cer-tify and deliver to the City Treasurer said assessment on the second day of September, A. D. 1902.'

"And then follow directions to the city treasurer for the collection, and an imposition of interest after a fixed date of payment.

"The particular thing to be observed here is, that the council fix a time for assessment, in the first sense, and a time of assess-ment in the second sense. The first is the first day of July; the second is the period from that day to the second day of September.

"By observing this distinction a simultaneous assessment of all taxable property is made, and the assessors have ample time for their labors. There would be no difficulty in apply-ing this sensible system to any town in the State, for when once

explained, it must be within the capacity of the most moderate intelligence.

" But the court has held that the General Laws do not require the town to do so, the words, 'may order the time when such tax shall be assessed' in section 1 of chapter 46, and the provision of section 4: 'The assessors shall assess and apportion any tax on the inhabitants of the town, and the ratable property therein at the time ordered by the town,' being regarded as referring to the period of the assessors' labors, not to the standard point of time which shall be taken for the valuation. *Warwick & Coventry Water Co.* v. *Carr*, 24 R. I. 226.

" The necessity exists, however, for the fixing of a definite time, and when the town does not fix it, it must be settled by the acts of the assessors. Accordingly the court held in *Mc-Adam* v. *Honey*, 20 R. I. 351, that the assessment must be deemed to have been made on the day following the last date on which the tax-payers were notified to bring in their accounts. In *Kettelle* v. *Warwick &c. Water Co.*, 24 R. I. 485, the work of making the assessment occupied two days. 'It was commenced on the fourth and completed on the fifth day of September, 1900,' says the court, 'and we think it must therefore be held that the entire assessment took effect on the last named day. This is a definite time and fully meets the requirement of the statute.'

" Applying this rule to the present case, the notice issued in 1899 was to make returns on September 11th, and the work of the assessors was performed September 11 and 12, and the latter day, September 12, was the time of the 1899 assessment which is referred to in chapter 944, and which should have been specified in the notice given by the assessors to the defendant in 1901.

" It is no answer to this defense to say that the defendant owned the same property on both days, for the question here is not whether the defendant in justice and equity ought to contribute the amount sued for to the treasury of the town, but whether the town and its agents have performed the conditions precedent upon which the legislature has granted power to take the defendant's money against his will. In a case

brought to recover taxes paid, the plaintiff must show that he is equitably entitled to the sum sued for; *Curtis v. Supervisors, &c.*, 22 Wis. 167; Cooley on Taxation, 808; here the town must establish its right *strictissimi juris*." 

It follows that the time for rendering an account must follow the day and hour established for the valuation and ownership of the ratable estate of the taxpayer in order that he may be able to render a true and exact account thereof as required by statute, and as has been the proper construction of the statute in some of the towns in the State. Thus to hold, however, is not to hold that taxes assessed and collected under provisions similar to the case at bar have been unlawfully collected. Having been paid without protest or objection in this respect, they must be deemed to have been lawfully collected and the objection waived which might have been successfully interposed against their enforced collection. This exception of the defendant, therefore, must be sustained.

(2) The description of the property set forth in the assessment roll is as follows:

| NAME. | Description. | Real estate value. | Total valuation. | Amount of tax. |
|---|---|---|---|---|
| Warwick & Coventry Water Company..... | Pipes in street........ | 60,000 | ........ | ........ |
| | N. E. Part lot 2 on A. K. Barnes plat $1/_{26}$.. | 12,000 | 72,000 | $540 00 |

The words, letters, and figures in the expression "N. E. part lot 2 on A. K. Barnes Plat ½₆" are manifestly insufficient. The object of the description is not only to inform the taxpayer what property is taxed as his, but also to inform the public, if sold for non-payment of the tax, just what is liable for the tax, and what is being conveyed for the non-payment of it. If it be conceded that the letters "N. E.," as applied to a description of land, are the usual and ordinary abbreviations of the words "North East," it still remains true that there is no means of identifying how much of "lot 2" a "part" of it

includes, or whether the area be rods or acres. *Head* v. *James et al.*, 13 Wis. 641; *Greene* v. *Lunt*, 58 Me. 518; *Adams* v. *Larrabee*, 46 Me. 516; *People* v. *Reat*, 107 Ill. 581; *City of Jefferson* v. *Whipple*, 71 Mo. 519; *Lessee of Massie's Heirs* v. *Long et al.*, 2 Ohio, 364; *Detroit Young Men's Society* v. *Mayor &c. of Detroit*, 3 Mich. 172; *People* v. *Rickert*, 159 Ill. 496; *Orton* v. *Noonan et al*, 23 Wis. 102; *Hook* v. *People*, 177 Ill. 632; *Treon's Lessee* v. *Emerick*, 6 Ohio, 391; *Murphy* v. *Hall*, 68 Wis. 202. So, too, the fraction "$\frac{1}{26}$" would naturally suggest to a stranger that the interest of the taxpayer was one twenty-sixth part of some estate. Here it was sought to be established that "$\frac{1}{26}$" meant Plat Book 1, page 26, to the assessors. Certainly such an expression would not be generally so understood. We may add that the testimony also shows that there is no plat bearing the title of the "A. K. Barnes Plat" on record in said town. Certainly no such description as appears in the assessment roll in this case would be considered apt in a conveyance of real estate, and greater accuracy in description is often necessary in tax assessments than· in conveyances. For example, a conveyance by A. to B. of "all my real estate" would undoubtedly pass title to B. while it would be manifestly insufficient to support a tax assessment.

(3) So the expression "Pipes in streets 60,000" is manifestly too indefinite, especially in view of the uncontradicted fact that there were other companies having pipes in the streets of the same town, and that the pipes of the defendant company were less in extent than those of other companies. This description falls directly within the objection held to be fatal· in *Young* v. *Joslin*, 13 R. I. 677, and in *Evans* v. *Newell*, 18 R. I. 38, where the court says: "Again, the description is so vague it in no way identifies the land assessed. The owner could not know from it what lands were assessed to him nor whether the lands of others might be included in the assessment, Such an assessment imposes ·no duty upon a taxpayer." Inasmuch as the granting of the right to lay water pipes in the streets of the town is vested in the town council (Gen. Laws cap. 40, § 37), it is certainly within the power of

the assessors to describe from the records that the pipes of the defendant in certain streets only were assessed to it.

The plaintiff seeks to validate these descriptions by virtue of the provisions of Pub. Laws cap. 920, passed November session, 1901, and which is as follows: "Taxes on real estate shall be assessed to the owners and separate tracts or parcels shall be separately described and valued as far as practicable: *Provided, however,* that no defect in description, or mistake in valuation shall be taken advantage of by any taxpayer to avoid the payment of a tax assessed against him unless he shall have brought to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate at such times as they may prescribe for the assessing of the tax."

The defences taken from a taxpayer by this provision are "a defect in description or mistake in valuation," and no others, and these defences are taken from a taxpayer only in case he shall have failed to make his return to the assessors "at such time as they may prescribe for the assessing of the tax." But the statute does not cover a wrong description in the sense of precluding a taxpayer from contesting an assessment for a tax on land not owned by him so as to validate a description of lot A, not owned by the taxpayer, and thereby support a description of lot B which is his property.

The words "a defect in description" doubtless include an imperfect statement of area, courses, distances, or boundaries of the taxpayer's property, but the land must still be his, and errors in the description of it are the only defects included by the statute, the object of the provision evidently being that the taxpayer shall not benefit by withholding a description of his ratable estate. Here it was denied that there was such a plat as the one described on the assessment roll, or that in December, 1903, the defendant was the owner of "Lot 2" on it; neither is it claimed that the defendant was the owner of a fractional interest in any land, nor is it possible to determine how much of any given tract of land a "part" of it includes. This is a misdescription, and not a "defect in description."

And further, inasmuch as the time prescribed for the making

of the return was a time within which it was impossible to make a return of ratable estate owned by the defendant on December 31, 1903, and which the assessors consequently were not authorized to prescribe, the defendant should not be penalized by their action, since the defendant can not be said to have failed to bring in his account if he could not bring it because of the failure of the assessors to give valid and legal notice and hearing. Indeed, although the notice given by the assessors in the case at bar specifically provided that December 31, 1903, was by them prescribed "for the assessment of said tax," they gave no opportunity to make a return except between December 14 and 19. Had the assessors prescribed the same number of days for receiving returns subsequent to December 31 which they prescribed prior thereto, and which they should have done under the statute hereinbefore referred to, cap. 46, § 6, *supra,* many of the questions raised on this record must have been decided adversely to the defendant.

The exceptions present many other important questions, but inasmuch as the considerations heretofore advanced are fatal to the plaintiff's right to recover, we find it unnecessary to consider them.

The defendant's exceptions to the refusal of the court to grant the second and thirteenth requests to charge the jury are sustained, and the case is remitted to the Superior Court with direction to enter judgment for the defendant for costs.

*Frederick A. Jones,* for plaintiff.

*John J. Arnold,* for defendant.